[Civ. No. 47086. Second Dist., Div. Five. Nov. 17, 1976.]

MARGUARITA GARCIA et al., Plaintiffs and Appellants, v.
DAVID B. SWOAP, as Director, etc., Defendant and Respondent.

## COUNSEL

Daniel M. Luevano, Rosalyn M. Chapman, Philip L. Goar, Dorothy T. Lang, Warren D. Weinstein, Ronald S. Javor, John E. McDermott, Daniel S. Brunner and Raymond Campos for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, N. Eugene Hill, Assistant Attorney General, Ronald V. Thunen, Jr., Ronald Gold, Edmund E. White and Jerold A. Prod, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**STEPHENS, J.**—In a class action against the Director of the State Department of Benefit Payments (Department) plaintiffs and appellants challenged the validity of a Department regulation in a complaint for injunctive and declaratory relief. The preliminary injunction was denied, and judgment was entered for the defendant. Plaintiffs then entered the instant appeal.

*Facts*

Plaintiffs Marguarita Garcia and Palmida Castanon, represent themselves and a class of persons who are recipients of the aid to families with dependent children (AFDC) program. The administrative regulation challenged by them, EAS 44-315.6, provides as follows:

"*Budget Period*

.61   The budget period in counties without an approved alternate payment system:

".611 The budget period for AFDC-FG and AFDC-U cases shall be the second prior calendar month before the first installment of the corresponding payment period.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

".62   The budget period in counties with approved alternate payment systems:

".621 The budget period for AFDC-FG and AFDC-U cases shall be a 28 to 31-day period ending not more than 31 days nor less than 28 days before the first installment of the corresponding payment period. The budget period is not limited to a calendar month."

Under the instant regulation, known as "Prior Month Budgeting," an AFDC grant for the current month is calculated on the basis of the net nonexempt income that is received two months prior to the actual payment of the grant.[1] Since the budget period precedes the payment

---

[1]Because the budget period precedes the payment period by two months, Prior Month Budgeting cannot commence for a new recipient until the third month of receipt of AFDC.

period by two months, a grant in April is based on a recipient's February income, a grant in May is based on March income, and so forth. All AFDC recipients are required to submit a monthly report of all income received during the budget period. In the intervening month between the budget period and the payment period, the county welfare department computes the welfare grant based upon that reported income, and issues the grant at the start of the payment period.

Appellant Garcia and her four children received an AFDC check for $355 in July 1974.[2] For the four preceding years, her only source of support was the AFDC program. In both June and July 1974, she received, in addition to the AFDC grant, $200 in child support from her ex-husband. No child support money was received in August or September. She reported the income to her caseworker on the two occasions that she received it, but claims that her caseworker never told her that the income would be used to lower her AFDC grant two months later. In August and September her AFDC grant was reduced to $155 to reflect her June and July income. Appellant Garcia had no other available income in August or September other than the AFDC grant since the child support payments received in June and July had been spent on past due bills.

In July 1974, Mr. Castanon was residing with his wife and child and earned from part-time work net nonexempt income of approximately $250. Appellant Castanon declares that her husband spent all of the income in July by contributing $180 toward his father's funeral and the remainder on his own personal needs. In August, Mr. Castanon left his family and has not returned; appellant's grant was reduced to $86 to reflect Mr. Castanon's July income.

### Contentions

Appellants Garcia and Castanon contend, on behalf of themselves and the class of welfare recipients receiving aid under California's AFDC program, that the Prior Month Budgeting scheme (PMB) is contrary to state and federal law and that the regulation which implemented this scheme (EAS 44-315.6) is therefore beyond the rule-making authority of the director of benefit payments. ■ In particular, appellants claim that the PMB regulation is in direct conflict with the purpose of

[2]No evidence was adduced at trial, and findings of fact were waived. The record consists solely of the complaint, answer, exhibits thereto, and three declarations.

AFDC—to provide for the *current* needs of dependent children, and with a federal AFDC regulation (45 C.F.R. § 233.20(a)(3)(ii)(D)) requiring that grants to needy families be made based on currently available income and resources. It is further claimed that the PMB system contravenes California statutes setting minimum aid standards (Welf. & Inst. Code, § 11450) and limiting reductions of current grants to effect recoupment for prior overpayments (Welf. & Inst. Code, § 11004).

*Discussion*

Before reaching appellants' objections to California's current AFDC budgeting scheme we note that there may be an independent ground for reversal of the judgments against Mrs. Garcia and Mrs. Castanon. At the time of trial, the federal "income and resources" regulations then in effect allowed consideration only of "such net income as is actually available for current use *on a regular basis*" in determining the amount of AFDC assistance. (45 C.F.R. § 233.20(a)(3)(ii)(C), effective Jan. 29, 1969; italics added.)[3] By implication, nonregular or sporadic income was not to be considered by the welfare agency. Clearly, Mrs. Garcia's income could have been classified as "sporadic," though it is not clear that the part-time earnings of Mr. Castanon could have been so classified. Thus, Mrs. Garcia's reduction of payment could be attributed not to the operation of PMB, but rather to the possibly erroneous consideration of sporadic income in reducing a subsequent assistance grant. But because Mrs. Castanon's complaint more likely arises from the operation of the PMB system itself, we cannot avoid an evaluation of such a system in this appeal. Further, since the income and resources regulation has since been amended to delete the regular income restriction (45 C.F.R. § 233.20(a)(3)(ii)(D), effective Aug. 1, 1975)[4] cases such as Mrs. Garcia's will properly come within the scope of PMB, and in such cases the lower court will need our guidance as to the propriety of injunctive relief.

█ In reviewing the Prior Month Budgeting regulation we recognize that we cannot superimpose our own policy judgment upon that of a

---

[3] That clause provided that in establishing the amount of AFDC assistance, "only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered; . . ."

[4] This clause now reads as follows: " . . . net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance; . . . ."

state administrative agency which acts in a quasi-legislative capacity. (*Pitts* v. *Perluss,* 58 Cal.2d 824, 832 [27 Cal.Rptr. 19, 377 P.2d 83].) But the latitude which an administrator has in implementing a state and federal statutory scheme is not unlimited. ■ It is well settled that a state welfare administrator may not operate welfare programs which alter, impair, or impede their statutory schemes (*Morris* v. *Williams,* 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; see also *California Welfare Rights Organization* v. *Carleson,* 4 Cal.3d 445, 458 [93 Cal.Rptr. 758, 482 P.2d 670]; *Daley* v. *State Dept. of Social Welfare,* 276 Cal.App.2d 801, 804 [81 Cal.Rptr. 318]), and it is this court's obligation to strike down regulations effectuating such welfare operations. (*Morris* v. *Williams, supra.*) Thus, to the extent that the PMB regulation is inconsistent with controlling state and federal statutes, fundamental principles of administrative law require that it be declared invalid, and its further operation may properly be enjoined. (See *Cooper* v. *Swoap,* 11 Cal.3d 856, 864-865 [115 Cal.Rptr. 1, 524 P.2d 97].)

We proceed now to an evaluation of the controlling federal law and policy governing the AFDC program. ■ Initially we note that states which qualify for AFDC funding and which elect to participate, must comply with the mandatory requirements established by the Social Security Act, as interpreted and implemented by regulations promulgated by the Department of Health, Education and Welfare. (*Ogdon* v. *Workmen's Comp. Appeals Bd.,* 11 Cal.3d 192, 199 [113 Cal.Rptr. 206, 520 P.2d 1022]; *County of Alameda* v. *Carleson,* 5 Cal.3d 730, 739 [97 Cal.Rptr. 385, 488 P.2d 953].) Title IV of the Social Security Act, 42 United States Code, section 602(a)(7), requires that a state AFDC plan "must . . . provide that the state agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid. . . ." The regulation adopted pursuant to this directive provides that "net income [actually] available for current use" shall be considered in determining need and the amount of assistance. (45 C.F.R. § 233.20(a)(3)(ii)(D).) Once a family is found to be eligible for AFDC assistance the federal statute further requires that aid to dependent children "be furnished with reasonable promptness. . . ." (42 U.S.C. § 602(a)(10).)

■ The federal AFDC program was designed to provide welfare for families without a "breadwinner," "wage earner," or "father," a need unfulfilled by other welfare programs. (*King* v. *Smith,* 392 U.S. 309, 328 [20 L.Ed.2d 1118, 1131-1132, 88 S.Ct. 2128].) As such, it has as its

primary and almost exclusive purpose the protection of such dependent children through the provision of assistance payments to meet their current needs. (42 U.S.C. § 601 (1970)); *King, supra,* at p. 325 [20 L.Ed.2d at. p. 1130]; see *Rodriguez* v. *Vowell* (5th Cir. 1973) 472 F.2d 622, 627.)[5] It has been recognized, in addition, that a state welfare agency may not frustrate this purpose to advance otherwise valid concerns such as state fiscal and deterrence objectives.[6] (See *King, supra,* at p. 320 [20 L.Ed.2d at p. 1127].) Two corollaries have developed out of these principles: first, cases interpreting the "income and resources" regulations (45 C.F.R. § 233.20(a)(3)(ii)(D)) have all recognized that the state welfare agency may not *presume* that income is in fact available to the needy family whether the income is only a hypothetical one (e.g., *King, supra,* at p. 319, fn. 16 [20 L.Ed.2d at pp. 1126-1127]; *Van Lare* v. *Hurley,* 421 U.S. 338 [44 L.Ed.2d 208, 95 S.Ct. 1741, 1747]), or whether the income was actually received, but in a past payment period. (*National Welfare Rights Organization* v. *Weinberger* (D.D.C. 1974) 377 F.Supp. 861, 868.) Second, cases interpreting the federal recoupment regulation (45 C.F.R. § 233.20(a)(12)(i))[7] have established that the dependent child cannot be punished (through the reduction of assistance grants) for parental mismanagement of income. (*Hagans* v. *Wyman* (E.D.N.Y. 1975) 399 F.Supp. 421, 425; *Cooper* v. *Laupheimer* (E.D. Pa. 1970) 316 F.Supp. 264, 269.)[8]

A close analysis of the Prior Month Budgeting scheme reveals several basic shortcomings in light of the foregoing standards. In actual operation PMB is little different from its precursor, concurrent month

[5]The AFDC program was enacted "for the purpose of encouraging the care of dependent children in their own homes . . . by enabling each state to furnish financial assistance and rehabilitation and other services, . . . to needy dependent children. (42 U.S.C. § 601 (1970).)

[6]Among such objectives are the following: promotion of fiscal integrity; recovery of overpaid funds to those who might otherwise be deprived of aid; deterrence of fraudulent claims; and removal of the stigma of an uncontrollable "handout" program." (See Note, *Due Process and Statutory Limitations on AFDC Recoupment Procedures* (1974) 74 Colum.L.Rev. 1464, 1475-1476.)

[7]Since *National Welfare Rights Organization* v. *Weinberger, supra,* 377 F.Supp. 861, the federal recoupment regulation was modified to prohibit recoupment in cases in which the family has insufficient funds on hand to make up for a reduced grant. The *Weinberger* court declared the existing federal recoupment regulation invalid since it was based on the conclusive presumption that overpayment funds were currently available even though spent prior to the time of recoupment. (*Id.,* at p. 868.)

[8]*Cooper, supra,* 316 F.Supp. 264, cites four remedies short of reducing assistance payments in such situations: "[1] [T]he state may provide guidance and counseling services regarding the proper use and management of AFDC funds, 42 U.S.C. § 605; [2] it may provide for protective payments, 42 U.S.C. § 606(b)(2); [3] it may appoint a

budgeting,[9] in cases in which family income remains constant—either at a low level, or at the zero level. As long as income remains static no hardship is suffered by a family receiving a current assistance grant based on its financial status two calendar months earlier. However, in cases in which AFDC families receive sporadic income in one month (the Garcia case), or where an income source which was available one month has since ceased to be available (the Castanon case), the vagaries of this system of retrospectively applied payments become apparent.

In the case of sporadic income, Prior Month Budgeting can be viewed as a streamlined form of recoupment—struck down in *Weinberger, supra,* in contravention to the fundamental policy of providing for the current needs of the dependent child, and in violation of the current AFDC recoupment regulation. (45 C.F.R. § 233.20(a)(12)(i).) In this respect, PMB also avoids the specific recoupment limitations set forth in Welfare and Institutions Code section 11004, which parallel the federal standards.[10] Both federal and state recoupment provisions proscribe the reduction of a subsequent assistance payment in the amount of a prior

guardian or legal representative to receive and manage the funds for the child, 42 U.S.C. § 1311; or [4] it may remove a child from a home upon a judicial determination that the parent is not using the funds for the benefit of the child, 42 U.S.C. §§ 605, 608(a)(1). Only if the state provides other care and assistance can it withhold AFDC aid from a needy, dependent child. 42 U.S.C. § 604(b)."

[9]Under concurrent month budgeting, in use in California prior to the adoption of PMB in 1972, receipt of income in one month affects assistance payments in the same month.

[10]Subdivisions (c) and (e) of the Welfare and Institutions Code provide as follows:

"(c) Any person who makes full and complete disclosure of those facts as explained to him pursuant to subdivision (a) is entitled to rely upon the award of aid as being accurate, and that the warrant he receives correctly reflects the award made, except that the county paying the aid shall be allowed a period of six months following the month of payment, or six months following the hearing provided in subdivision (e), within which to adjust any errors or changes in amount of grant resulting from changes in income or need which occur too late to be reflected in the grant for the current month. Whenever possible, adjustments or overpayments shall be prorated evenly over the adjustment period.

"(e) Current grants may be reduced because of prior overpayments only if the recipient has income or resources available in the amount by which the county proposes to reduce payment; except that where there is evidence which clearly establishes that a recipient willfully withheld information about his income or resources, such income or resources may be considered in the determination of need to reduce the amount of the grant in current or future periods. Prior to effecting any reduction of current grants to recover prior overpayments, the recipient shall be advised of the proposed reduction and of his entitlement to a hearing on the propriety of the reduction. *In no event shall the grant to a needy child be reduced unless the parents or other responsible persons have sufficient available resources or income to meet the current needs of the needy child according to the department standard during the period of reduction.*" (Italics added.)

overpayment unless the recipient has sufficient income or resources available to meet the current needs of the needy child. (45 C.F.R. § 233.20(a)(12)(i)(A)(1); Welf. & Inst. Code, § 11004, subd. (e).) Subdivision (e) of section 11004 is clearly worded to protect the children in these situations, while regulation EAS 44.315.8 (fn. 11) is designed to alleviate the problem and is not mandatory. We emphasize this point because it is believed that Prior Month Budgeting is a helpful and, if properly applied, reasonable method for computing welfare grants. The *regulation* should be amended so as to provide payments to protect the children. If this were accomplished, the PMB system would then comply with federal regulations. However, as PMB is presently applied, a prior "overpayment" occurs, under these recoupment provisions when income is received in a particular month but is not reflected in the assistance grant for that month. (See *Oliva* v. *Swoap,* 59 Cal.App.3d 130, 137 [130 Cal.Rptr. 411].) In the guise of "retrospectively applied assistance payments," PMB provides for the same sort of correction for "overpayment" in instances of sporadic family income, but *without* the concomitant protective feature which assures that the child's current needs will not go wanting. In Mrs. Garcia's case, an isolated $200 child support payment received in June, together with a full AFDC payment that month, was the basis for an "automatic" $200 reduction in her AFDC grant for August, despite the fact that, in the interim, the "extra" funds were no longer available (having been spent on past due bills). Mrs. Garcia and her four children were thus left with $155, well below subsistence standards,[11] on which to survive the month. It is this very result which is explicitly prohibited in both state and federal AFDC law and policy, no matter what characterization the budgeting system is given.

In other than sporadic income cases, the PMB system suffers from similar shortcomings, although the analogy to recoupment may no longer apply. As an example, consider the situation in which an AFDC recipient has a regular income which, in January, suddenly ceases. The last month for which income was available is used, under PMB, to compute the AFDC payment two months later. Thus, the March grant reflects a reduction from the full AFDC payment in the amount of the January income, even though the recipient has been without any income for over a month, and even though the January income has been spent

---

[11]Welfare and Institutions Code, section 11452. This provision sets the subsistence standards for AFDC families according to the number of needy persons in the family.

prior to the current grant or was never available to the child (as in the case of Mrs. Castanon). Here again, the disparity between current need and current, though retrospectively applied, payment is impermissible under federal AFDC law. (See 45 C.F.R. § 233.20(a)(3)(viii); *Cooper* v. *Laupheimer, supra,* 316 F.Supp. 264, 269.) Whether PMB is viewed in this instance as entertaining a presumption of current availability of past income, or as effectively punishing the needy child for parental mismanagement of funds, it is fundamentally at odds with AFDC policies and provisions.

Respondent insists that Prior Month Budgeting is a reasonable means of computing aid and is consistent with state and federal law. Specifically, he claims that the latitude allowed the states in computing AFDC grants (*Jefferson* v. *Hackney,* 406 U.S. 535, 545 [32 L.Ed.2d 285, 295, 92 S.Ct. 1724]), has not been exceeded in the adoption of the PMB regulation since PMB is far more accurate in this regard than its predecessor—concurrent month budgeting, and since it takes into consideration only such income as is actually available for current use as specified by federal regulation. While it is true that PMB does not suffer from the defect suffered by several budgeting methods which consider "hypothetical" income, we cannot agree with respondent's contention that the income considered under PMB is available for current use. It is true that the federal regulation does not prohibit a welfare agency from considering income other than that which is in the recipient's pocket at the time of the current grant in computing the amount of the payment. However, the disparity permitted between current need and current payment cannot be countenanced when such payment is based upon income earned *two months earlier,* even where such a system may promote administrative efficiency or conserve public funds. (See *King* v. *Smith, supra,* 392 U.S. 309, 320 [20 L.Ed.2d 1118, 1127].) Current AFDC payments must be made to meet the *current* needs of the dependent child. (*Cooper* v. *Laupheimer, supra,* 316 F.Supp. 264, 269.) Whether the income used to compute aid is no longer available at the time of payment because it was spent or because it was never actually available, as in Mrs. Castanon's case, the child cannot, in effect, be punished by the reduction of AFDC assistance. (*Hagans* v. *Wyman, supra,* 399 F.Supp. 421, 425; *Cooper* v. *Laupheimer, supra,* at p. 269.) Such a system not only ignores the currency requirements for the consideration of income, but also the practical economic realities facing AFDC families, who, living at bare subsistence levels, cannot be expected to budget sporadic income for a payment period two months in the future.

An AFDC budgeting system, to be in compliance with state and federal law, should, at a minimum, consider income in the same month or within a 31-day period in which assistance payments are to be made. The inherent inaccuracies in the concurrent month budgeting system, to the extent that income must be estimated, can be quickly adjusted through the provisions of Welfare and Institutions Code section 11004. The vagaries in the existing PMB system, apparent in such cases as those of Mrs. Garcia and Mrs. Castanon, cannot be alleviated simply by the application of an emergency payment or supplemental payment provision.[12] Rather, the goal of conservation of public funds can be enforced in conjunction with a concurrent month budgeting system through the application of civil sanctions against the parent or guardian and through programs which encourage the proper management of income.

Accordingly, we hold regulation EAS 44-315.6, imposing a system of Prior Month Budgeting for the computation of AFDC assistance payments, to be invalid.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

Hastings, J., concurred.

KAUS, P. J.—I reluctantly concur in the result as applied to these particular plaintiffs. I feel, however, compelled to express certain reservations:

(1) As footnote 1 of the court's opinion indicates, Prior Month Budgeting (PMB) does not go into effect until the third month after payments commence. Therefore, for the first two months of eligibility the recipient receives a full grant without deduction for additional income

---

[12]We reiterate that the basic design of Prior Month Budgeting, though it works hardship in only a few instances, is incorrect. Further, the supplemental payment regulation is purely discretionary in its application. That regulation, EAS 44.315.8, provides as follows:

"If unusual and unforeseen substantial changes in a recipient's income occur, a supplemental payment may be made when necessary to protect the welfare of the child(ren). Supplemental payments shall be limited in any month to the extent that the total grant, together with currently available income, does not exceed the allowable Maximum Aid.

"When a recipient receives a supplemental payment in more than one month, the total of such payments may not exceed the recipient's total net nonexempt income during the first and second months preceding a change in budgeting method used by the county; or during the first and second months for which aid payments are made."

during either month. The federal requirement is that payments begin "with reasonable promptness . . . ." Obviously, if a state cannot recoup overpayments necessarily made because of the impossibility of making immediate payments that reflect additional income not yet in the hands of the recipient, the pressures to give an elastic interpretation to the "reasonable promptness" requirement may prove irresistible. Thus, while taking care of the problems of these plaintiffs, the net effect of our opinion may not be beneficial to welfare recipients in general.

(2) Without expressly disagreeing, I wish to disassociate myself from the court's discussions of Mrs. Garcia's problems under the former regulation referring to " . . . income . . . actually available for current use *on a regular basis* . . . ." Quite arguably this regulation intended to withdraw from consideration only true windfalls, but not child support payments which should be regularly paid, even if they are not.

(3) If current law compels the result which we reach in this case—as I agree it does—I am not nearly as sanguine as the court that "the inherent inaccuracies in the concurrent month budgeting system . . . can be quickly adjusted through the provisions of Welfare and Institutions Code section 11004." I suspect that the result of this opinion will not be a return to concurrent month budgeting but rather an attempt to scuttle, insofar as permissible, the present "pay now, recoup later" scheme.

A petition for a rehearing was denied December 15, 1976, and respondent's petition for a hearing by the Supreme Court was denied February 3, 1977.