TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 93-705 |
| of | : | |
| | : | July 20, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |
| | : | |

THE HONORABLE MIKE GOTCH, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Are the California administrative regulations implementing the provision of personal care services as a Medi-Cal benefit in compliance with state and federal statutes and federal regulations pertaining to (1) the authorized scope of personal care services, (2) physician certification of personal care services, (3) supervision of personal care providers, and (4) standards for personal care provider participation?

CONCLUSION

The California administrative regulations implementing the provision of personal care services as a Medi-Cal benefit are in compliance with state and federal statutes and federal regulations pertaining to (1) the authorized scope of personal care services, (2) physician certification of personal care services, (3) supervision of personal care providers, and (4) standards for personal care provider participation.

ANALYSIS

The in-home supportive services program (IHSS) of the Department of Social Services (DSS) provides supportive services to aged, blind, and disabled persons who are unable to perform such services themselves and who could not remain safely in their homes unless the services were so provided. (Welf. & Inst. Code, §§ 12300-12314.)[1] The program, which is partly funded by federal block grants, is administered by county welfare departments under the supervision of DSS. (§ 12306, subd. (b); 42 U.S.C. §§ 1397-1397e.) The services offered include personal care services, heavy cleaning, medical appointment accompaniment, yard hazard abatement, and

_____

[1]All references hereafter to the Welfare and Institutions Code are by section number only.

paramedical services. The tasks are those the individuals would normally perform for themselves except for their functional limitations.

The Department of Health Services (DHS) administers the Medi-Cal program which provides health care services for the benefit of qualified low-income eligible persons. (§§ 14000-14640.) The Medi-Cal program is financed in part under the federal Medicaid program. (§ 12306, subd. (c); 42 U.S.C. §§ 1396-1396v.) Personal care services may be provided by a state as a Medicaid optional benefit. (42 C.F.R. § 440.170(f) (1993).) In order to secure federal funding for personal care services in California, the Legislature has authorized the personal care services program (PCSP) to be a Medi-Cal benefit provided under the administrative direction of DSS in conjunction with its IHSS program. (§ 14132.95.)

To implement the state law allowing PCSP as a Medi-Cal benefit, DSS and DHS have been authorized by the Legislature to adopt emergency regulations. (Stats. 1993, ch. 7, § 3; Stats. 1992, ch. 939, § 8.) The question presented for analysis concerns whether these regulations are consistent with state and federal statutes and federal regulations, particularly as they pertain to the furnishing of paramedical services. We conclude that the regulations in question comply with the governing statutes and federal regulations.

As we have noted in the past (67 Ops.Cal.Atty.Gen. 225, 230 (1984); 62 Ops.Cal.Atty.Gen. 494, 503 (1979)), California, having elected to participate in the federal government's social welfare program, must comply with the mandatory requirements established by Congress in the Social Security Act and implemented by regulations promulgated by the Health Care Financing Administration of the United States Department of Health and Human Services (HCFA). (See *Burnham* v. *Woods* (1977) 70 Cal.App.3d 667, 673; *Garcia* v. *Swoap* (1976) 63 Cal.App.3d 903, 909; *In re Jeannie Q.* (1973) 32 Cal.App.3d 288, 297-298; *X* v. *McCorkle* (D.N.J. 1970) 333 F. Supp. 1109, 1114, affd. *sub nom. Engleman* v. *Amos* (1971) 404 U.S. 23.) The courts have held invalid state regulations inconsistent with congressional policy regarding social welfare service recipients. (Cf. *Van Lare* v. *Hurley* (1975) 421 U.S. 338; *Townsend* v. *Swank* (1971) 404 U.S. 282; *Lewis* v. *Martin* (1970) 397 U.S. 552; *Rosado* v. *Wyman* (1970) 397 U.S. 397; *King* v. *Smith* (1968) 392 U.S. 309.)[2]

We also note preliminarily that when reviewing the validity of state administrative regulations, the California Supreme Court has applied a uniform set of rules which we summarized in 72 Ops.Cal.Atty.Gen. 173, 179-180 (1989) as follows:

> ". . . `Where a statute empowers an administrative agency to adopt regulations, such regulations "must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose."' (*Ontario Community Foundation, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816.) `[T]here is no agency discretion to promulgate a regulation which is inconsistent with the governing statute.' (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679.) `Administrative regulations that violate acts of the Legislature are void and no protestations that they are merely an exercise of administrative discretion can sanctify them.' (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737.) `Administrative regulations that <u>alter or amend that statute or enlarge or impair its scope</u> are void and courts not only may, but it is their obligation to strike down such regulations.' (*Ontario Community Foundation, Inc.* v. *State Bd. of Equalization, supra,* 35 Cal.3d at 816-817, emphasis

---

[2] We shall assume for purposes of this analysis that the federal regulations in question constitute a valid exercise of federal administrative power.

added.)  `It is fundamental that an administrative  agency may not usurp the legislative function, no matter now altruistic its motives are.' (*Agricultural Labor Relations Board* v. *Superior Court* (1976) 16 Cal.3d 392, 419.)"

1.       Authorized Scope of Personal Care Services

The first issue to be addressed is whether the scope of personal care services set forth in the state administrative regulations properly extends to paramedical services in compliance with state and federal statutes and federal regulations.  DHS's Regulation 51183, subdivision (a),[3] provides in pertinent part:

"Personal care services include:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(9) Paramedical services . . . defined in Welfare and Institutions Code section 12300.1 as follows:

"(A)  Paramedical services include the administration of medications, puncturing the skin or inserting a medical device into a body orifice, activities requiring sterile procedures, or other activities requiring judgment based on training given by a licensed health care professional.

"(B)  Paramedical services are activities which persons could perform for themselves but for their functional limitations.

"(C)  Paramedical services are activities which, due to the beneficiary's physical or mental condition, are necessary to maintain the beneficiary's health."

DSS's Regulation 30-780.1(9) incorporates the foregoing provisions verbatim.

The governing state statute, section 14132.95, expressly provides that personal care services shall include paramedical services.  Subdivision (d)(1) of section 14132.95 provides in pertinent part:

"For purposes of this section, personal care services shall mean all of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(J)  Paramedical services."

---

[3]The regulations of DHS under consideration herein are contained in title 22 of the California Code of Regulations, sections 50000 to 59999 pertaining to health care services.  The regulations of DSS at issue herein are contained in its Manual of Policies and Procedures, sections 30-700 to 30-780.  The federal regulations in question adopted by HCFA are contained in title 42 of the Code of Federal Regulations, sections 440.1 to 440.270 and sections 484.1 to 484.52 (1993).  All references hereafter to these regulations are by regulation number only.

With respect to applicable federal law, HCFA's Regulation 440.170(f) provides for personal care services "prescribed by a physician in accordance with the recipient's plan of treatment and provided by an individual who is . . . [q]ualified to provide the services."

Hence, we find no statutory conflict with the regulations of DHS and DSS. They do not alter or amend the governing laws or enlarge or impair the statutory language. We conclude that under both state and federal statutes and federal regulations, the state administrative regulations properly include paramedical services.

2.      Physician Certification

The second issue to be addressed relates to the sufficiency of physician certification for the providing of personal care services under the state administrative regulations. DHS's Regulation 51350, subdivision (c), states as follows:

"Personal care services will be prescribed by a physician. The beneficiary's medical necessity for personal care shall be certified by a licensed physician. Physician certification shall be done annually."

DSS's Regulation 30-780.2 incorporates the foregoing provisions verbatim.

State statutes specify that personal care services must be "[p]rescribed in accordance with a plan of treatment." (§ 14132.95, subd. (a)(2).) Under federal law, as previously noted, personal care services are defined in part as services "prescribed by a physician in accordance with the recipient's plan of treatment." (Reg. 440.170(f).)

Accordingly, we again find that the DHS and DSS regulations regarding physician certification for the providing of personal care services do not alter, amend, enlarge, or impair the scope of the state or federal statutes or federal regulations governing physician certification of services. We conclude that the administrative regulations properly require physician certification of personal care services.

3.      Supervision of Care Providers

The third issue to be addressed concerns the adequacy of supervision of personal care providers as set forth in the state administrative regulations. DHS's Regulation 51350, subdivision (d), provides as follows:

"Registered nurse supervision consists of review of the service plan and provision of supportive intervention. The nurse shall review each case record at least every twelve months. The nurse shall make home visits to evaluate the beneficiary's condition and the effectiveness of personal care services based on review of the case record or whenever determined as necessary by staff of a designated county department. If appropriate, the nurse shall arrange for medical follow-up. All nurse supervision activities shall be documented and signed in the case record of the beneficiary."

DSS's Regulation 30-780.2 incorporates the foregoing provisions verbatim.

Looking at the state statutes, we find that personal care services must be provided "under the supervision of a registered nurse." (§ 14132.95, subd. (a)(3).) Further, personal care services "shall be rendered, under the administrative direction of [DSS], in the manner authorized

. . . for the [IHSS] Program."  (§ 14132.95, subd. (f).)  As for the applicable federal regulation, personal care services are defined in part as those provided by an individual who is "[s]upervised by a registered nurse."  (Reg. 440.170(f).)

Accordingly, we believe that the DHS and DSS regulations requiring supervision of care providers do not alter, amend, enlarge, or impair the scope of the governing state or federal statutes or federal regulations.  We conclude that the administrative regulations properly require nurse supervision of care providers.

4.      Standards For Care Providers

The final issue to be addressed concerns the sufficiency of the state regulations pertaining to the qualifications of personal care providers.  DHS's Regulation 51204 provides in part:

"All providers of personal care program services must be approved by Department of Health Services and shall sign the `Personal Care Program Provider/Enrollment Agreement' form [SOC 426 (1/93)] designated by the Department agreeing to comply with all applicable laws and regulations governing Medi-Cal and the providing of personal care services. . . ."

DSS's Regulation 30-700.2 provides in part:

"The Personal Care Services Program (PCSP) provides personal care services to eligible Medi-Cal beneficiaries . . . and is subject to all other provisions of Medi-Cal statutes and regulations."

Under the governing state statutes, personal care services must be "[p]rovided by a qualified person," and "[a] provider of personal care services shall be qualified to provide the service . . . ." (§ 14132.95, subds. (a), (f).)  In addition, federal law requires that personal care services must be provided by an individual who is "[q]ualified to provide the services."  (Reg. 440.170(f).)  As previously explained, personal care services are those tasks that the individuals would be able to perform for themselves if physically capable.  Neither the state nor federal statutory provisions require a particular level of competency for performing these services.

We reject the suggestion that the DHS and DSS regulations do not satisfy all training requirements for personal care providers contained in federal law, specifically those set forth in HCFA's Regulation 484.36.  Regulation 484.36 provides:

"(a)  The aide training program must . . . total at least 75 hours, with at least 16 hours devoted to supervised practical training.

"(b)  An individual may furnish home health aide services . . . only after that individual has successfully completed a competency evaluation program as described in this paragraph. . . ."

The specifications of Regulation 484.36 implement the federal Medicare program (title XVIII of the Social Security Act, 42 U.S.C. § 1395).  Personal care services, as already noted, are covered under the federal Medicaid program (title XIX of the Social Security Act, 42 U.S.C. § 1396).

Similarly, DHS's Regulation 51200, subdivision (a), is inapplicable because personal care services are not "included in the Medicare scope of benefits."  This regulation states:

"All providers of health care services desiring to qualify for participation in the Medi-Cal program must be eligible to, or certified for, and participate in the Medicare program . . . if they provide services that are included in the Medicare scope of benefits and if they provide those services to persons who are eligible beneficiaries of the Medicare program."

Finally, we note in this regard that the provision of title XIX of the Social Security Act (42 U.S.C. § 1396d(a)(7)) which was amended in 1990 (Pub.L. 101-508, title IV, § 4721) to include personal care services as an adjunct of "home health care services" was specifically deleted in the Omnibus Budget Reconciliation Act of 1993 (Pub.L. 103-66, title XIII, § 13601(a)(1), (c)), effective October 1, 1994. Consequently, the question of whether personal care service providers must meet the standards established for home health care service providers has been answered by Congress. The implementing federal regulations and state statutes and regulations will of necessity require modification to reflect these changes in the federal statutes effective October 1, 1994.

We conclude that the DHS and DSS regulations do not alter, amend, enlarge, or impair the scope of the state or federal statutes or federal regulations setting forth the standards for participation as personal care providers in the PCSP.

* * * * *