TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-213 |
| of | : | |
| | : | January 7, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE ELOISE ANDERSON, DIRECTOR OF THE DEPARTMENT OF SOCIAL SERVICES, has requested an opinion on the following question:

Are non-physician disability evaluation analysts employed by the Department of Social Services authorized to order consultative examinations by physicians or psychologists and clinical laboratory tests in connection with applications for disability benefits under the Social Security Act?

CONCLUSION

Non-physician disability evaluation analysts employed by the Department of Social Services are authorized to order consultative examinations by physicians or psychologists in connection with applications for disability benefits under the Social Security Act; however, clinical laboratory tests may only be ordered by a non-physician disability evaluation analyst with the approval of a physician.

ANALYSIS

The Disability Evaluation Division of the Department of Social Services ("Department") is responsible for making disability determinations for California residents who file disability claims under Titles II, XVI, and XIX of the federal Social Security Act ("Act"). (See 20 C.F.R. §§ 404.1501-404.1694, 416.101-416.1499 (1996).) These determinations are made by a two-member team composed of a staff physician and a disability evaluation analyst ("analyst").

The physician is responsible for evaluating all of the medical aspects of the claim and determining whether the claimant's medical condition is sufficiently severe to be eligible for disability benefits on medical considerations alone. If not, the physician provides a statement, based on the medical documentation in the file, concerning the claimant's physical capabilities.

The analyst, a non-physician, is responsible for determining the vocational portion of the disability determination and for gathering all data necessary for making a disability determination, including social, vocational, and medical information. The analyst receives training in all aspects of disability claims

determinations, including medical criteria.

Federal law outlines the medical conditions and levels of severity which must be met in order for an individual to be considered disabled. (20 C.F.R. § 404.1501, Append. 1 [listing of impairments].) The criteria often require the results of a specific examination or laboratory study. If this information is not available from medical sources treating the claimant, it must be obtained by outside sources in order to evaluate a disability application.

In such cases the Department may order consultative examinations and clinical laboratory tests. The results of the examinations and tests are reviewed by the staff physician as part of the medical determination of the claimant's eligibility.

The question presented for resolution is whether an analyst is authorized to order the above described consultative examinations and clinical laboratory tests without obtaining the explicit approval of the staff physician. We conclude that the consultative examinations may be so ordered but not the clinical laboratory tests.

In making evaluations of a disability under the Act, the state is acting on behalf of the federal government. Specifically, Title II of the Act (Federal Old-Age, Survivors and Disability Insurance Benefits) provides for payment of disability insurance benefits to individuals insured under the Act. (42 U.S.C. §§ 401-433.) Title XVI of the Act (Supplemental Security Income for the Aged, Blind, and Disabled) provides for a minimum level of cash income benefits for persons not covered under Title II. (42 U.S.C. §§ 1381-1383d.) Title XIX of the Act (Grants to States for Medical Assistance Programs) provides for a comprehensive federal-state program for medical care, commonly known as "medicaid" (Medi-Cal in California) under which federal grants are authorized to participating states for the benefit of medically indigent persons. (42 U.S.C.§§ 1396-1396v; see 64 Ops.Cal.Atty.Gen. 804 (1981).)

As we have observed on numerous occasions (see, e.g., 77 Ops.Cal.Atty.Gen. 153, 154 (1994), 67 Ops.Cal.Atty.Gen. 225, 230 (1984), 62 Ops.Cal.Atty.Gen. 494, 503 (1979)), California, having elected to participate in the federal government's social welfare program, must comply with the mandatory requirements established by Congress set forth in the Act and with the federal regulations duly promulgated thereunder. (*Burnham* v. *Woods* (1977) 70 Cal.App.3d 667, 673; *Garcia* v. *Swoap* (1976) 63 Cal.App.3d 903, 909.)

Accordingly we shall first examine the federal regulations providing for state participation in the determinations of disabilities under Titles II, XVI, and XIX of the Act. **Footnote No. 1** The initial step in the process of making a disability determination is to examine the medical evidence to determine whether the claimant has an impairment resulting from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. (Rules 404.1508, 416.908.) If the necessary information is not readily available, the claimant may be asked to attend a consultative examination paid for by the government. (Rules 404.1512(f), 416.912(f).) A consultative examination is a physical or mental examination or test, which will only be ordered from a qualified (i.e., duly licensed) source. (Rules 404.1513(a), 404.1519, 404.1519g, 404.1519k, 416.913(a), 416.919, 416.919g, 416.919k.) It is used to secure needed medical evidence not contained in the claimant's file, such as clinical findings, laboratory tests, or a diagnosis or prognosis necessary for the decision regarding disability. (Rules 404.1518a(a)(2), 416.918a(a)(2).)

The consultative examinations in question must be performed by a licensed physician, psychologist, or other health care professional. (See Rules 404.1515(a), 416.913(a).) We believe that such tests may be ordered by either the staff physician or the analyst for the Department, since the person performing the examination, by virtue of holding a professional license, would have the authority to perform the examination. In other words, no issue arises as to the non-physician analyst "practicing medicine" by

ordering such an examination without the approval of the staff physician, because the person performing the examination would have the necessary license.

With respect to ordering laboratory tests, however, additional considerations are present. Under California law, a clinical laboratory may ". . . accept assignments for tests only from and make reports to persons licensed under the provisions of law relating to the healing arts or their representatives. . . ." (Bus. & Prof. Code, § 1288.) **Footnote No. 2** The Department's analysts are not healing arts licensees. Are they, however, qualified to order clinical laboratory tests as "representatives" of the staff physician, even when the physician has not reviewed or approved the request for laboratory tests? We believe that the exception in section 1288 for a licensee's "representative" is intended to refer to a person (such as a nurse or other member of a physician's staff) who is transmitting an order from the licensee. The statute is a limitation on who may order laboratory tests, not an expansion of the right to order tests. (19 Ops.Cal.Atty.Gen. 201, 203 (1952).) Section 1288 does not authorize an analyst for the Department to make an independent determination regarding the ordering of a clinical laboratory test; it requires the approval of a licensee. (See 66 Ops.Cal.Atty.Gen. 302, 306 (1983) ["`under section 1288 a clinical laboratory may only accept assignments for testing from a healing arts licentiate where the specimen to be assayed can be lawfully initially obtained by the licentiate as an incident to and within the scope of his practice'"].)

This conclusion is not affected by the federal regulations that govern the ordering of laboratory tests or establish procedures for the state to act on behalf of the federal government. Rules 404.1519m and 416.919m provide:

> ". . . [W]e will not order diagnostic tests or procedures that involve significant risk to you, such as myelograms, arteriograms, or cardiac catheterizations for the evaluation of disability under the Social Security program. Also, a State agency medical consultant must approve the ordering of any *diagnostic test or procedure* when there is a chance it may involve significant risk. . . ." (Emphasis added.)

Rules 404.1519m and 416.919m establish that (1) certain diagnostic tests or procedures which involve significant risk will not be ordered for the evaluation of a disability under any circumstances and (2) a state agency medical consultant must approve the ordering of any diagnostic test or procedure "when there is a chance it may involve significant risk." We do not believe that the language of these regulations demonstrates an intent to override state licensure requirements for the ordering of tests that do not fall within these two categories. Indeed, the very determination of whether there is a chance that a test may involve significant risk requires a medical opinion.

Similarly Rules 404.1519s(f)(6) and 416.919s(f)(6), requiring the state to have procedures providing for "medical or supervisory" approval for the ordering of "any diagnostic test or procedure where the question of significant risk to the claimant/beneficiary might be raised," cannot be read as excusing from state licensure requirements the ordering of tests when such risk would *not* be raised. While the state must operate under the federal guidelines (Rules 404.1603(a), 416,1003(a)), which provide that the disability claims examiner may *initiate* requests for consultative evaluations (Program Operations Manual System, § DI 245001.005), nothing in the federal guidelines creates any exemption from state licensing requirements. The initiation of a request is not inconsistent with obtaining medical authorization before that request is transmitted to a clinical laboratory

Nor does the fact that an analyst is a state employee remove section 1288's requirement for licensure. Health and Safety Code section 1277, subdivision (b) provides in part:

> ". . . the licensure requirements for professional personnel, including but not limited to, physicians and surgeons, dentists, podiatrists, psychologists, marriage, family, and child counselors, pharmacists, registered nurses, and clinical social workers in the state and other governmental health facilities licensed by the state . . . shall not be less than those for

governmental health facilities licensed by the state . . . shall not be less than those for professional personnel in health facilities under private ownership. . . ."

We have previously concluded that this statutory language is not limited to the licensing of health facilities but also applies to the individual licensing requirements of state employees engaged in health care. (64 Ops.Cal.Atty.Gen. 305 (1981).) With respect to whether such licensing requirements conflict with state civil service laws, we have observed:

". . . [T]he Legislature has spoken and has set forth the professional licensing requirements . . . for governmentally employed psychologists and clinical social workers (and others) by its adoption of [Health and Safety Code] section 1277, subdivision (b). Accordingly, insofar as section 1277, subdivision (b) cannot be harmonized with the general provisions of the state civil service laws, section 12778, subdivision (b) must control." (*Id.*, at p. 311.)

We have also applied this statutory language to county mental health workers, concluding that "absent some statutory basis for doing so, a county may not permit or require an unlicensed person to treat persons suffering from any mental condition." (66 Ops.Cal.Atty.Gen. 189, 199 (1983).)

State law requires an analyst to be licensed before ordering or receiving a laboratory test from a clinical laboratory. (§ 1288; Health & Saf. Code, § 1277, subd. (b).) Federal law does not conflict with such requirement. We thus conclude that while an analyst may act as the representative of the staff physician in initiating requests, or transmit requests approved by the physician to a clinical laboratory, a non-physician analyst may not order clinical laboratory tests without the physician's approval.

---

**Footnote # 1**
The availability of benefits under Title XIX derives from a determination of eligibility under Title XVI. (42 U.S.C. §: 1396a(a)(10); 20 C.F.R. § 416.2111.) The federal regulations implementing Title II of the Act are found in title 20 of the Code of Federal Regulations, part 404, and the federal regulations implementing Title XVI of the Act are foun in title 20 of the Code of Federal Regulations implementing Title XVI of the Act are found in title 20 of the Code of Federal Regulations, part 416. All references hereafter to parts 404 and 416 will be designated respectively as "Rule 404.__" and "Rule 416__."

**Footnote # 2**
All references hereafter to the Business and Professions Code are by section number only.