[No. 3382–1–III.  Division Three.  August 19, 1980.]

ALVINA J. TOULOU, *Appellant,* v. THE DEPARTMENT OF
SOCIAL AND HEALTH SERVICES, *Respondent.*

138

*Dan Stormer* and *Richard Smith* of *Spokane Legal Services Center,* for appellant.

*Slade Gorton, Attorney General,* and *Walter E. White, Assistant,* for respondent.

ROE, J.—Petitioner Toulou, an enceinte unmarried woman, was receiving public assistance payments under the Aid to Families with Dependent Children (AFDC–R) program. Her grant was $190 per month. During May 1978, after having received the grant for that month, she obtained, in addition, a $500 per capita payment from the Colville Tribe, of which she is a member, and an income tax refund of $299.42, for a total of $799.42. She promptly reported both of these payments to DSHS.[1]

---

[1]Department of Social and Health Services.

The petitioner made no effort, as provided under WAC 388–28–484(2)(d), to forestall ineligibility for the next 2 months' grants by demonstrating that this money should have been used for verifiable expenses, such as medical care, unforeseen disaster or other changes in circumstances which would make it impossible for her to live on the additional resource without her regular grant.

Instead, recipient Toulou used the money as follows: to buy a car for $100, two tires for the car for $51.06, $150 in past–due rent to her parents, $100 department store account, and $250 on past–due medical and dental bills. Thus, she spent approximately $650 during the month of May in addition to her regular $190 grant.

Since each recipient is entitled to have $200 on hand considered as an exempt resource, the petitioner's eligibility for the months of June and July would be unaffected if these expenditures were proper. DSHS determined that they were not and, since these additional resources exceeded twice the amount of her monthly grant (plus $200), DSHS terminated her grant for June and July 1978. WAC 388–28–484(2)(d). This termination of her grant is suspended during her appeal.

Although the hearing examiner made a finding of fact, which was adopted by the trial court, that the petitioner had spent substantially all of her per capita payment and tax refund money by the end of June 1978, the record would reflect that it was actually spent by the end of May 1978. Thus, that finding could appear to be clearly erroneous. In view of the disposition made of this case, the error is harmless, even though the finding could be held to be technically correct because, since, if it were spent by the end of May 1978, it was certainly spent by the end of June 1978.

Appellant Toulou claims that DSHS's rule allowing the department to withhold grants for 2 subsequent months based upon the previous month's receipt of other monies, with no consideration being given to the present need of the recipient, is contrary to state and federal law. This case

turns on a definition of what is meant by current need and resources.

■ "AFDC, which was created by 42 U.S.C. §§ 601–10, is a joint federal–state program involving federal funding and state administration." If a state participates in the program, "then the state system must be consistent with the federal legislation creating the program and the federal rules and regulations implementing it." *Anderson v. Morris,* 87 Wn.2d 706, 709, 558 P.2d 155 (1976).

> [T]he pertinent federal statutory provision is 42 U.S.C. § 602(a)(7).
>> (a) A State plan for aid and services to needy families with children must . . . (7) . . . provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children . . .
>
> The applicable implementing regulation, promulgated by the Department of Health, Education, and Welfare, is contained in 45 C.F.R. 233.20(a)(3)(ii)(c) (1973):
>> [I]n establishing financial eligibility and the amount of the assistance payment . . . (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered . . .

(Footnote omitted.) *Anderson v. Morris, supra* at 709–10.

45 C.F.R. § 233.20(a)(3)(ii)(D) (1979), states:

> (D) Net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance;

RCW 74.08.025(1) provides:

> Public assistance shall be awarded to any applicant:
> (1) Who is in need; . . .

RCW 74.04.005(13) defines need as:

> The difference between the . . . recipient's cost of requirements for himself and the dependent members of his family, . . . and value of all nonexempt resources and

nonexempt net income received by or available to the . . . recipient and the dependent members of his family. Thus, the definition requires actual availability for current use. WAC 388–28–484(2)(d) states:

(d) If the income is recurrent or nonrecurrent and its value is in excess of two months' requirements minus other income, the recipient is ineligible . . . and the grant is terminated. Ineligibility shall continue for two months. The period of ineligibility, however, may be reduced if the applicant has verifiable expenses such as medical care, unforeseen disaster or other changes in circumstances which make it impossible for him to live on his resource for the two–month period of ineligibility. The eligibility of a former recipient who reapplies shall be determined on the same basis as a new applicant.

In *Anderson v. Morris, supra,* a cash inheritance and an income tax refund were considered in determining eligibility need under AFDC. It was held in that case that a lump sum payment is not income. The question remained, was it a resource which could be taken into consideration? As in *Anderson v. Morris, supra,* the recipient here argues that the State is required to make a specific factual determination that an income tax refund or a similar lump sum amount is currently available before it can be considered within AFDC regulations. Thus, it is argued, since recipient Toulou spent all of her per capita payment and her income tax refund within the month of May 1978, in which she received it, it could not be considered as currently available for the months of June and July and she should receive her normal grant.

 The result is that if a person on AFDC, according to the appellant's position, were successful in spending the additional money within the month in which it was received, after having received earlier in the month the welfare grant, that the person would be without resources and thus be eligible and must receive the grant for the succeeding months. Theoretically, this would enable a recipient to receive various sums of money each month while she was receiving a grant and if she could successfully dispose

of it all in the month received, it would never have a bearing on her grant. Welfare payments which come from the taxpayer should be on the basis of actual need. There should be no approval given to recipients for hasty disposal of all nonexempt cash in order to maintain eligibility. It is true that there is a provision for a repayment of such sums improperly spent, but the repayment is collectible only when the department is able to find the recipient with nonexempt resources on hand, and such procedure does not allow diminishment of the grant if there is no resource or money presently in the possession of the recipient.

The appellant states that since public assistance is to be awarded to anyone who is in *need* (present tense), the only need requirement is current need. Hence, she argues Washington statutes and the WAC regulations adopted pursuant thereto are inoperative under the supremacy clause of article 6 of the United States Constitution, which provides that the constitution and the laws of the United States which shall be made pursuant thereto will be the supreme law of the land.

We do not read the federal statute or the regulation made pursuant thereto that the resource or income to be available must mean that it is actually presently in hand at the moment that eligibility for a grant is determined. Even under subsection (D) of 45 C.F.R. § 233.20 mentioned above, income is available as a resource and shall be considered if the recipient has a legal interest in a liquidated sum and has the legal ability to make such a sum available for support and maintenance. That language clearly contemplates that the money need not be in hand.

In *Anderson v. Morris, supra,* as in the case at bench, the recipient had spent the money. In considering this question, our court adopted the language of a Pennsylvania commonwealth court, which said:

> Appellant in fact received the refund; it was in fact available for her use; and she did in fact use it. The argument that because she spent the refund, albeit for the meritorious purpose of paying past due bills, some

of which had accrued prior to the time she began receiving assistance, and that, therefore, the refund was *no longer* available to meet current needs, is without merit.

*Anderson v. Morris, supra* at 713, quoting from *Department of Pub. Welfare v. Ivy,* 18 Pa. Commw. Ct. 348, 351, 336 A.2d 435, 436 (1975).

Our Supreme Court held that once the funds have in fact been received or made available for disposal by the recipient, the State may consider them as available within the framework of the WAC regulations.

There was no showing here that DSHS considered the receipt of the money as a conclusive presumption that it was available. Hence, its procedure is proper.

In *Lopez v. Jamieson,* 124 Ariz. 447, 604 P.2d 1158 (1979), Arizona's plan was similar to Washington's. There, the recipient obtained a lump sum payment in 1 month. This resulted in the loss of an AFDC grant for future months. It was held valid and not contrary to federal rules and regulations, which permit states to consider only currently available income. This is in harmony with the solution we have reached in this case.

The recipients in *Lopez* and in this case relied on *Garcia v. Swoap,* 63 Cal. App. 3d 903, 134 Cal. Rptr. 137 (1976), *cert. denied,* 436 U.S. 930, 56 L. Ed. 2d 775, 98 S. Ct. 2829 (1978). There, an AFDC recipient received some child support from her ex–husband while she was receiving a grant. Another recipient in the same case had a husband who had earned $250 which he had spent by contributing a portion of it to his father's funeral and the remainder on his own personal needs. In each case the recipient's grant was reduced by a certain amount.

It was argued that the California regulation which reduced the grants was contrary to the purpose of AFDC, that is, to provide for the current needs of dependent children. The California court adverted to 42 U.S.C. § 602(a)(7) which requires that a state's AFDC plan shall, in determining need, take into consideration any other income and

resources of any child or relative claiming aid. It was recognized that state welfare agencies may not presume that income is in fact available to a needy family merely because it is received; and further, a dependent child cannot be punished through reduction of assistance grants for parental mismanagement.

The California court found that the state prior month budgeting scheme by which grants were reduced by receipt of sporadic income was inadequate. It did not assure the child's current needs would be met and that the children would not be left below the subsistence standards on which to survive.

*Garcia v. Swoap,* 63 Cal. App. 3d at 913–14, 134 Cal. Rptr. at 143–44 reads:

> It is true that the federal regulation does not prohibit a welfare agency from considering income other than that which is in the recipient's pocket at the time of the current grant in computing the amount of the payment. However, the disparity permitted between current need and current payment cannot be countenanced when such payment is based upon income earned *two months earlier,* even where such a system may promote administrative efficiency or conserve public funds. . . . Current AFDC payments must be made to meet the *current* needs of the dependent child. . . .
>
> An AFDC budgeting system, to be in compliance with state and federal law, should, at a minimum, consider income in the same month or within a 31–day period in which assistance payments are to be made.

(Citations omitted.)

Apparently then, under the California plan, the following month's reduction of the amount of grant would have been permissible. *Garcia v. Swoap, supra,* was considered in the later case of *Lopez v. Jamieson, supra.*

■ The Arizona court declined to follow the California reasoning and stated that in *Garcia* the United States took the position in a brief presented as amica curiae on a petition for certiorari that the California system was fully compatible with then existing regulations. A reasonable,

consistently applied administrative interpretation by an agency of its own regulation should not be rejected. Thus, the Arizona court rejected the holding of *Garcia.* So do we.

Our disposition is in harmony with the federal regulations that the money need not be in the pocket of the recipient at the time of the determination. Currently does not mean simultaneously. A provision is allowed under the regulation where there are emergency payments which should have been made. Hence, a suspension of payments for the 2 months immediately following the month in which the nonexempt income or resource was received which was in excess of the 2 months' grant is not unreasonable or inconsistent with the federal scheme.

In effect, the appellant took it upon herself to pay bills, including money owed to members of her family, and to purchase a car when she knew, or should have known, that the money received from the welfare was based upon need. She in effect preferred her own prior creditors at the expense of the taxpayers. She does not have the authority to make that unilateral preference.

Since we find that the nonexempt resources, that is, the IRS refund and the per capita payment, are considered a current asset or resource which is available to those in need, and as the only practical method of accommodating the situation, and since we find no conflict with any federal rule or regulation, the judgment of the trial court is affirmed.

Appellant Toulou makes the additional argument that since those who apply in the first instance for welfare may dispose of their assets, and in some instances pay off their debts, and then qualify, that there is a denial of equal protection since she has already qualified and is denied her right to dispose of her resources as she sees fit for her proper debts and remain qualified.

State of Washington legislative enactments are presumed to be constitutional, and the party challenging the constitutionality has a heavy burden of establishing beyond a reasonable doubt that the enactment in question is unconstitutional. *In re Harbert,* 85 Wn.2d 719, 538 P.2d

1212 (1975). This applies specifically to regulations. *Anderson, Leech & Morse, Inc. v. State Liquor Control Bd.*, 89 Wn.2d 688, 575 P.2d 221 (1978).

■ There is no requirement that persons involved with welfare cannot, consistent with the equal protection clause of the constitution, be treated differently depending upon their status at a given time. It is only reasonable to give the State some time to process cases where recipients receive additional resources and to reflect such fact in the next available grant.

In *Boyle v. Department of Pub. Assistance*, 53 Wn.2d 828, 335 P.2d 478 (1959), the court concluded that a difference in treatment between applicants and recipients upon consideration of an award for personal injuries for public assistance eligibility purposes was not unconstitutional. In that case the plaintiff received money for pain and suffering as the result of an automobile accident, and the court held, even though there was a legislative act distinguishing an applicant from a recipient as to classification, it was not unconstitutional in determining the interpretation of resources.

We find no violation of equal protection in this case.

In *Weinberger v. Salfi*, 422 U.S. 749, 45 L. Ed. 2d 522, 95 S. Ct. 2457 (1975), the issue was presented as to the constitutionality provision in the Social Security Act respecting wives and stepchildren of deceased wage earners and the length of time of their relationship with the deceased. There, the United States Supreme Court said, "a noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status, . . ." *Weinberger v. Salfi*, 442 U.S. at 772, 95 S. Ct. at 2470.

The recipient here cannot set the terms upon which she receives her welfare grant. The judgment is affirmed.

GREEN, C.J., concurs.

McINTURFF, J. (specially concurring)—The majority recognizes that Alvina Toulou promptly reported receipt of

additional income to DSHS (as she had been notified to do upon application for benefits), but it then holds her to compliance with a rule of which she was uninformed and unaware. WAC 388–28–484(2)(d). Although the result reached by the majority is correct under present law, I believe DSHS should notify welfare applicants/recipients *not only* that a change in economic circumstances must be reported within 10 days, *but also* that benefits may be terminated for up to 2 months if the additional money is spent for unapproved purposes; that this may be done under WAC 388–28–484(2)(d). Such a warning would place a minimal burden on DSHS and would avoid others being in the situation in which Alvina has been placed.

Since lack of notification of the consequences of failing to receive approval for expenditures of this additional income was not alleged as error, I cannot assume the expenditures would have been allowed under the above WAC regulation. I am constrained to concur in the result.