[No. 48017–6.   En Banc.   September 16, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. MARY
N. WALLACE, *Petitioner.*

*William W. Messer,* for petitioner.

*Arthur R. Eggers, Prosecuting Attorney,* and *Carl L. Johnson, Deputy,* for respondent.

WILLIAMS, J.—Petitioner Mary N. Wallace was convicted of theft in the first degree for failing to report income while receiving welfare benefits. In an unpublished opinion, the Court of Appeals, Division Three, affirmed her conviction but remanded the case to the trial court to ascertain the actual amount of overpayment for purposes of sentencing and setting the proper amount of restitution. *State v. Wallace,* 29 Wn. App. 1027 (1981). We find that the State has not sustained its burden of proving that petitioner willfully failed to report income and therefore reverse her conviction.

Petitioner married James Wallace on September 3, 1971. In September of 1975, after learning that petitioner was pregnant with their second child, James Wallace left his wife and family. In April of 1976, he was convicted of a crime and sentenced to a prison term. He eventually was incarcerated at the Washington State Penitentiary at Walla Walla. During his incarceration, James Wallace received veterans' educational benefits attributable to military service completed prior to his marriage to petitioner. He testified that he considered the money from the Veterans Administration as his separate property and that petitioner had no authority to use any of the money for her own purposes. These funds were deposited in his inmate account. Prison officials permitted disbursements from these funds only after requests by Mr. Wallace were approved by the law liaison officer.

In March of 1978, petitioner applied for and received public assistance. These welfare benefits continued through

December of 1978. During this same time period James Wallace, in anticipation of his release from prison, requested that petitioner purchase tools for him so that he could start a furniture business upon his release. When he wanted particular items purchased, he would send petitioner a check from his inmate account with specific instructions on how the money was to be used. In December of 1978, Mr. Wallace formalized this arrangement by having his attorney draft a limited power of attorney in petitioner's favor. He testified he made petitioner his agent because he could trust no one else to adequately handle his money. His attorney testified the stated purpose of the document was to limit petitioner's authority over the money sent to her to only those purposes specified by her husband.

Petitioner took the stand and testified that she did not use the money for her own purposes, but instead disbursed those funds according to her husband's specific instructions. She stated that she was not told in any of her interviews what constituted "income". Additionally, petitioner testified she did not believe she had a legal ability to use the money for her own purposes and therefore did not believe it to be "income".

Petitioner did not report the money she received from James Wallace's inmate account. As a result, she was charged with willfully failing to report income in violation of RCW 74.08.331. Petitioner waived her right to a jury trial and was subsequently found guilty after a trial to the bench. The Court of Appeals, Division Three, affirmed the conviction but determined the amount of overpayment received by petitioner was inaccurately calculated. The case was remanded for a determination of the amount involved and the proper sentence to be imposed. *State v. Wallace, supra.* We accepted review to determine whether petitioner's conduct constituted willful failure to report available income within the meaning of RCW 74.08.331.

The crime of welfare fraud is defined in RCW 74.08.331, which reads in part:

> Any person who by means of a wilfully false statement, or representation, or impersonation, or a *wilful failure to reveal* any material fact, condition or circumstance affecting eligibility of need for assistance, . . . or a *wilful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income,* . . . affecting his eligibility . . . to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled *shall be guilty of grand larceny* . . .

(Italics ours.) The penalty language in the above statute was impliedly repealed by RCW 9A.56.100, which equated grand larceny with theft. Consequently, welfare fraud under RCW 74.08.331 constitutes a particular degree of theft, depending on the amount of overpayment received. *State v. Sass,* 94 Wn.2d 721, 725, 620 P.2d 79 (1980).

The terms "resource" and "income" are defined by RCW 74.04.005(11) and (12), respectively, as follows:

> (11) "Resource"—Any asset, tangible or intangible, owned by or *available to* the applicant . . . which can be applied toward meeting the applicant's need, . . .
>
> . . .
>
> (12) "Income"—All appreciable gains in real or personal property (cash or kind) or other assets, which are received by or *become available for use and enjoyment by* an applicant or recipient after applying for or receiving public assistance: . . .

(Italics ours.) Since RCW Title 74 does not have its own definition of the requisite mental state for welfare fraud, reference must be made to RCW 9A.08.010(4). That section equates the term "willful" with the mental state of "knowledge", which is defined as follows:

> (b) *Knowledge.* A person knows or acts knowingly or with knowledge when:
> (i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

Thus, for petitioner to be convicted of welfare fraud in violation of RCW 74.08.331, the State had to prove she had actual knowledge that the funds sent to her by her husband were "available for her use."[1] Petitioner contends that she received no income that was available for her use. A corollary issue, not raised by either party but implicit in petitioner's first argument, is the question of whether petitioner's actions were "willful". We find that under the circumstances of this case, the State failed to prove either that petitioner had income available for her use or that she acted willfully in not reporting these funds.

To determine whether petitioner had resources or income available to her which she was required to report under RCW 74.08.331, we must ask two questions: (1) Did the petitioner have assets or appreciable gains in real or personal property? and (2) Were those assets or gains in real or personal property available for her use and enjoyment? For a number of reasons, we are persuaded petitioner had no resources or income available to her within the meaning of the reporting requirements of RCW 74.08.331.

First, we conclude that James Wallace's veterans' educational benefits were his sole and separate property and therefore were not available for petitioner's use. He earned the right to receive these benefits prior to his marriage to petitioner. According to RCW 26.16.010, property owned by the husband prior to his marriage to petitioner remained his separate property. Not only did James Wallace's right to receive these benefits accrue prior to his marriage to petitioner, but his receipt of these benefits occurred after he and petitioner became separated. Since

---

[1] In *State v. Shipp*, 93 Wn.2d 510, 516–17, 610 P.2d 1322 (1980), we reviewed a jury instruction based on RCW 9A.08.010(1)(b)(ii). We held that the statute permits, rather than directs, a finding that a defendant had knowledge if an ordinary person would have had knowledge under the circumstances. Therefore, we found a jury instruction utilizing the language of the statute unconstitutional because it could be interpreted by the jury to create a presumption of knowledge if an ordinary person would have knowledge under the circumstances. The statute permits only an inference; the fact finder must still find subjective knowledge.

the evidence reflects that James Wallace deserted his wife prior to his incarceration, we need not decide whether his imprisonment constituted a sufficient separation for purposes of RCW 26.16.140. That statute, applicable here, states that earnings and accumulations during the time a husband and wife are separated shall be the separate property of each spouse. Thus, since petitioner did not contribute to James Wallace's earning of the right to receive payments and was separated from him at the time of receipt of those payments, the property was his alone. *See generally* Cross, *The Community Property Law in Washington*, 49 Wash. L. Rev. 729 (1974).

█ Second, petitioner was unable to use the funds sent by her husband in a manner contrary to the limited power of attorney. Although the State contends the nature of the property is irrelevant here because James Wallace voluntarily transferred the funds to petitioner, this argument ignores the circumstances surrounding the transfer. Since the husband's benefits were his separate property, he was entitled to dispose of them as he saw fit. Petitioner's authority to deal with the funds was limited to her husband's specific instructions, because a limited power of attorney conveys only the authority expressed therein. *In re Estate of Springer*, 97 Wash. 546, 551, 166 P. 1134 (1917). By the terms of the limited power of attorney, therefore, petitioner was prohibited from using the funds for her own benefit. Any use of the funds in a manner inconsistent with James Wallace's instructions would have constituted a breach of petitioner's fiduciary duty. *Nelson v. Smith*, 140 Wash. 293, 294–95, 248 P. 798 (1926). *See also Theis v. duPont, Glore Forgan Inc.*, 212 Kan. 301, 306–07, 510 P.2d 1212 (1973).

Our decision should not be interpreted as exculpating individuals from violations of RCW 74.08.331 simply by virtue of a power of attorney. We reach this conclusion in this case only because the trial court specifically found that petitioner used the money in accordance with her husband's limited instructions to purchase tools and pay Mr.

Wallace's debts, and not for her own benefit. In the absence of evidence indicating this principal–agent relationship was fraudulent, we must find the funds in question were not available for petitioner's use.

■ Third, any interest petitioner could have had in her husband's veterans' educational benefits were inchoate rights, at best, and not property available for her use. The Court of Appeals found availability by relying on 38 U.S.C. § 3107 (1976), which deals with apportionment of Veterans Administration benefits, and by relying on the general proposition that a husband must support his wife and children.

The apportionment provision, 38 U.S.C. § 3107(c) (1976), reads as follows:

> (c) If a veteran is not living with his wife, or if any of his children are not in his custody, any subsistence allowance payable to him under chapter 31 of this title or that portion of the educational assistance allowance payable on account of dependents under chapter 34 of this title *may be apportioned* as may be prescribed by the Administrator.

(Italics ours.) The Court of Appeals reasoned that this section created a legal interest in the funds, thereby making those funds "available" to petitioner. We do not read the above provision in this manner. The statute states that benefits "may be apportioned as may be prescribed by the Administrator." 38 U.S.C. § 3107 (1976). The word "may" appears to make the apportionment discretionary with the Administrator of the Veterans Administration. In addition, 38 U.S.C. § 3001 (1976) requires that any individual making a claim for benefits must file a claim for such benefits before he or she may be paid.[2] The combination of the discretionary language of 38 U.S.C. § 3107(c) and the proce-

---

[2] In *Martin v. Martin*, 270 A.2d 141, 143 (D.C. 1970), the apportionment provision was interpreted as follows: "No benefits may be paid or furnished to any individual under the laws regulating veterans' benefits unless a claim has been made on a form prescribed by the Veterans Administration. 38 U.S.C. § 3001 (1964)."

dural requirements of 38 U.S.C. § 3001 leads us to conclude that petitioner did not have a legal interest in her husband's veterans' educational benefit funds. Until such time as petitioner actually applied for apportionment of those funds and the Administrator exercised his discretion to permit such apportionment, petitioner had no property interest in those funds.[3]

A similar analysis applies to the Court of Appeals conclusion that petitioner had a legal interest in the funds because her husband had an obligation to support his wife and children.[4] Again, this is at best an inchoate right which requires court intervention before investing petitioner with a legal interest in the funds in question. RCW 74.08.331 seems to require that availability and a legal interest in the funds coincide before the funds are reportable. "Availability" refers to whether the money is physically at one's disposal or capable of conversion into cash or its equivalent. RCW 74.04.005(11). This element was established in the present case since petitioner had the money in hand on various occasions. A "legal interest" in the money was never established, however, since there was no apportionment under 38 U.S.C. § 3107 (1976), and no action was commenced against petitioner's nonsupporting spouse to

---

[3]The Court of Appeals cited *Toulou v. Department of Social & Health Servs.,* 27 Wn. App. 137, 142, 616 P.2d 678 (1980) for the proposition that income is available as a resource and shall be considered if the recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. That case is factually distinguishable from this case, however. In *Toulou,* the recipient actually received her income tax refund and a per capita distribution payment from her Indian tribe, which she spent for her own benefit. Those sums were her own property and constituted liquidated sums. The *Toulou* case is inapplicable to funds as yet unliquidated and not apportioned as in the present case.

[4]RCW 26.20.030(2) makes desertion or nonsupport of a child under 16 years of age a felony punishable by fine and/or imprisonment for up to 20 years. As alternative remedies to a criminal nonsupport action, the court could impose fines or direct that periodic payments be made by the nonsupporting spouse. RCW 26.20.050(1) and (2). Additionally, the prosecuting attorney could apply to the court for attachment of any funds owed to or held for the benefit of the nonsupporting spouse. RCW 26.20.050(4).

require him to fulfill his support obligation. Without an actual legal right established in those funds, petitioner would have no appreciable gain in property constituting income. *State v. Ermert,* 94 Wn.2d 839, 845, 621 P.2d 121 (1980). Since a recipient must only report income or resources which the recipient is "required by law" to reveal, *see State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976), petitioner's failure to report funds in which she had no established legal interest does not violate RCW 74.08.331.

We cannot believe that the Legislature intended to impose criminal liability on a nonsupported spouse for her failure to pursue possible remedies against her husband, according to RCW Title 26, before receiving public assistance. The State's interests in this matter could have been protected adequately by means of a civil suit, pursuant to RCW 74.04.300, to recover any overpayment of benefits to petitioner, and by court ordered payment in a criminal action from James Wallace's inmate account which was being held by the Department of Social and Health Services (DSHS) at the penitentiary. RCW 26.20.050(4).

■ Petitioner's conviction must be reversed for an additional reason not specifically raised by the parties but implicit in the first argument. Since petitioner did not have a change in "income" or "resources" which she was required to report, she could not have acted with the criminal mental state required by RCW 74.08.331. As stated above, that statute requires a person to act in a "willful" manner—equivalent to the present mental state of "knowledge". *See* RCW 9A.08.010. As we stated in *State v. Jeske,* 87 Wn.2d 760, 766, 558 P.2d 162 (1976), "[i]mplicit in the words 'knowingly and willfully' is knowledge that the reporting was required." Thus, a person must be aware that the reporting of income or resources is required by law and then fail to do so before the criminal mental element of RCW 74.08.331 can be satisfied.

In the typical welfare fraud case, knowledge may well be inferred by the recipient's possession of funds that he or she fails to report. Petitioner, however, rebutted this infer-

ence by explaining that she was acting as her husband's agent and that she did not believe funds which she did not actively earn could constitute income. Consequently, she did not report these funds as income or resources. This situation is similar to that presented in *Ermert*. In that case, we noted that the defendant had not been advised as to the meaning of "income or resources" and her failure to report accumulations of public assistance savings did not constitute either income or resources which she was required by law to report. In the present case, petitioner testified to a similar failure to define reportable income or resources. Additionally, representatives of DSHS testified that they regularly did not define "income" or "resources" to public assistance recipients.

The legitimate explanation offered by petitioner combined with the testimony of the DSHS workers indicate that petitioner had no knowledge of any duty to report money received and disposed of in accordance with her husband's specific instructions. The State could have rebutted this testimony by showing: (1) that the limited power of attorney was fraudulent; (2) that petitioner used the funds for her own benefit or in a manner inconsistent with her limited authority; or (3) that she, in fact, had been informed that funds received in this manner were required to be reported to the authorities. The State failed to overcome petitioner's innocent explanation of her failure to report such funds by proving any of the above propositions. In the absence of such evidence, we cannot find a "willful" failure to report income or resources, as required by RCW 74.08.331, and petitioner's conviction cannot stand. *See Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

The circumstances of this case indicate petitioner did not have available resources or income which she was required to report and lacked the required criminal state of mind necessary for a welfare fraud conviction. Petitioner's ignorance of very technical legal distinctions regarding the nature of her interest in the funds cannot support criminal

liability. We reverse the Court of Appeals and vacate petitioner's conviction.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.