[No. 32568-0-I.   Division One.   August 1, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. JESUS L. PARADA, *Defendant,* NATIONAL AMERICAN INSURANCE COMPANY, *Appellant.*

*James M. Mucklestone* and *Mucklestone & Mucklestone*, for appellant.

*David R. Needy, Prosecuting Attorney*, and *Dionne Clasen, Deputy*, for respondent.

SCHOLFIELD, J. — National American Insurance Company (National) executed an appearance bond in the amount of $25,000 on behalf of Defendant Jesus L. Parada. Parada subsequently failed to appear for trial, and the trial court ordered the bond forfeited. National appeals the March 16, 1993, Order Confirming Bail Forfeiture and the November 15, 1993, Judgment of Forfeiture of Appearance Bond, arguing that the notice requirement of RCW 10.19.090 and the terms of the surety contract required the trial court to exonerate the bond. National also argues that the trial court abused its discretion by denying its motion for reconsideration. The State contends that National's appeal is frivolous and requests an award of attorney fees. We affirm.

In August 1992, Jesus Parada was charged by information with one count of first degree rape in Skagit County. National, through Cascade Bail Bonds, Inc. (Cascade), a bailor, executed a $25,000 appearance bond to secure Parada's release on the condition that he appear for trial on the rape charge. The upper right corner of the bond bears the statement "SEND ALL COURT NOTICES TO:" followed by Cascade's name, address and telephone numbers.[1] National's name is on the bond, but its address is not. The bond also states: "THIS BOND NOT VALID UNLESS ACCOMPANIED BY AN INDIVIDUALLY NUMBERED POWER OF ATTORNEY PROPERLY EXECUTED." Thus, National also executed a power of attorney, individually numbered NA25 106652, which appointed Cascade

---

[1]During oral argument before the trial court, National's counsel explained that the statement "SEND ALL COURT NOTICES TO:" and Cascade's name, address, and telephone numbers were not on National's original bond form but were stamped on the form by Cascade. Counsel also stated that National had not previously been aware of that practice.

its true and lawful Attorney-in-Fact for it and in its name, place and stead, to execute, seal and deliver for and on its behalf and as its act and deed, as surety, a bail bond only.

National's name and its Indianapolis address are printed at the top of the power of attorney.

Parada failed to appear for his trial date scheduled November 16, 1992. On the same day, the Skagit County Prosecuting Attorney, acting on behalf of the State, notified Cascade by telephone and by fax that Parada failed to appear. The prosecutor also mailed Cascade a Notice to Bailor to Show Cause Why Bail Should Not Be Forfeited for Nonappearance. The notice, which stated that Parada had failed to appear for trial, was addressed to "National American Insurance Company, c/o Cascade Bail Bonds, Inc." at Cascade's address. Accompanying the notice were a motion and affidavit for an order forfeiting bail, a note for calendar setting the hearing date for November 20, 1992, and a declaration of mailing indicating those documents were mailed to Cascade.

According to the affidavit of Karen Thibert, a Cascade employee, Cascade notified National by telephone on November 16, 1992, that Parada failed to appear. Immediately upon receiving the prosecutor's documents, Cascade forwarded them to National. On November 20, 1992, the prosecutor appeared before the trial court to argue the motion to forfeit bail. National was not present, and the trial court continued the hearing to December 4, 1992.

On November 24, 1992, the prosecutor wrote a letter to Parada's attorney informing him that the bail forfeiture hearing was continued until December 4. He also stated he was "anticipating forfeiture of the bond, since no response ha[d] been made to [his] office." Cascade received a copy of that letter and forwarded it to National on November 30, 1992.

On December 4, the trial court signed an Order Forfeiting Bail. The prosecutor was present but National was not. Cascade received a copy of the order, and on December 6, 1992, informed National by telephone about it. Cascade also sent a copy of the order by fax to National employee Mike Whitlock, whose job duties included receiving and reviewing all

correspondence addressed to National. Whitlock's declaration states in part:

4. During the thirty day period from November 16, 1992 to December 16, 1992, no notice of potential forfeiture for nonappearance of the defendant was given to or received by National American Insurance Company from the State of Washington on this case, as I would have been the recipient thereof.

5. To this date [January 26, 1993], no notice has been given to or received by National American Insurance Company from the State of Washington on this case.

National appeared through counsel in January 1993 and moved to exonerate the bond under RCW 10.19.090 because National, as surety, was never notified in writing by the court of Parada's unexplained absence. In its written response and at the hearing on the motion, the State argued that Cascade was an apparent agent and the State properly relied on the stamp on the bond directing that all court notices be sent to Cascade. The trial court postponed its decision until it could review the matter further, but it offered its preliminary reasoning as follows:

it strikes me that if [National] wants to take the position that [Cascade] has limited authority then this should expressly set this out so there isn't any confusion.

. . . .

. . . So there isn't any confusion at all in the language. That weighs heavily on the drafter of the document. [It] would seem to me very logical or a proper extension to think that unless it is clearly set forth that the agent can't rec[ei]ve notice the issuance of the bond itself does everything. It just seems it would be rather restrictive not to say that the agent has authority to receive notice of failure to appear and a request for forfeiture.

The court also noted that the State substantially complied with the notice requirement because it appeared that National received notice through Cascade within 30 days of Parada's unexplained absence. National's attorney never contended that National had not received the State's notices timely forwarded by Cascade. On March 16, 1993, the court confirmed the bail forfeiture based on its reasoning during the hearing and subsequently denied National's motion for

reconsideration. On November 15, 1993, findings of fact and conclusions of law were entered along with the judgment of forfeiture of the bond. National appeals.

I

We first consider whether the State's notice to Cascade of Parada's unexplained absence and of the subsequent court proceedings satisfied the statutory notice requirement to National, a surety, under RCW 10.19.090.

National argues that the State's notice to Cascade was ineffective because RCW 10.19.090 requires the court to notify the surety directly, and the power of attorney did not authorize Cascade to receive or accept notice on National's behalf. National also argues that by trying to expand the powers granted in the power of attorney, the State effectively extinguished National's obligation under the bond. Finally, National contends the State is estopped from claiming it gave proper notice.

■■ Standard of Review. The resolution of this issue involves the construction of RCW 10.19.090 and the parties' surety agreement. Construction of a statute is reviewed de novo. *Washington Fed'n of State Employees v. State Personnel Bd.*, 54 Wn. App. 305, 309, 773 P.2d 421 (1989). Absent disputed facts, the legal effect of a contract is likewise a question of law to be reviewed de novo. *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 204, 580 P.2d 617 (1978); *Clevco, Inc. v. Municipality of Metro. Seattle*, 59 Wn. App. 536, 539, 799 P.2d 1183 (1990), *review denied*, 117 Wn.2d 1006 (1991).

RCW 10.19.090 reads:

In criminal cases where a recognizance for the appearance of any person, either as a witness or to appear and answer, shall have been taken and a default entered, the recognizance shall be declared forfeited by the court, and at the time of adjudging such forfeiture said court shall enter judgment against the principal and sureties named in such recognizance for the sum therein mentioned, and execution may issue thereon the same as upon other judgments. *If the surety is not notified by the court in writing of the unexplained failure of the defendant to appear within thirty days of the date for appearance, then the forfeiture shall be null and void and the recognizance exonerated.*

(Italics ours.) Washington courts have not yet determined whether the statute's notice requirement can only be satisfied by written notice to the surety rather than written notice to the surety's agent.

Statutory Interpretation. National initially argues that the plain language of the statute obligated the trial court to exonerate the bond because the statute required written notice to the surety and did not authorize notice to be given to the surety's agent.

■■■ A court must construe a statute according to its plain language, and statutory construction is unnecessary and improper when the wording of a statute is unambiguous. *State v. Thomas*, 121 Wn.2d 504, 512, 851 P.2d 673 (1993); *ITT Rayonier, Inc. v. Dalman*, 67 Wn. App. 504, 509, 837 P.2d 647 (1992), *aff'd*, 122 Wn.2d 801, 863 P.2d 64 (1993). Statutes should also be given a rational, sensible construction. *Thomas*, 121 Wn.2d at 512. A rational and sensible construction of RCW 10.19.090 does not preclude a surety from designating an agent to receive notice on its behalf under the well-established laws of agency. The statute clearly does not purport to alter fundamental agency principles.

Further, this court must give effect to the intent of the Legislature. *ITT Rayonier*, 67 Wn. App. at 509. There is no indication that the Legislature intended the notice requirement in RCW 10.19.090 to be read as restrictively as National reads it. Notice through an agent is sufficient to achieve the obvious purpose of the statute: to alert the surety that it needs to appear and defend its interests under the bond.

■ Cascade's Apparent Authority To Receive Notice. Although National acted as surety for Parada, its relationship to Cascade in this case is that of principal to agent. Thus, the analysis of the scope of Cascade's authority to act on National's behalf is governed by traditional agency law rather than surety principles.

■ Under agency law, notice given to and knowledge acquired by an agent are imputed to its principal as a mat-

ter of law. *Hurlbert v. Gordon*, 64 Wn. App. 386, 396, 824 P.2d 1238, *review denied*, 119 Wn.2d 1015 (1992). Further,

> [a]n agent has apparent authority to act on behalf of his principal when the principal's conduct would lead a reasonable person to believe that the agent had authority to act. Reliance on the agent's authority must be justifiable. One dealing with an agent is not entitled to rely on the agent's representations when put on notice that a question exists as to the agent's authority. On the other hand, a party dealing in good faith with an agent who appears to be acting within the scope of his authority is not bound by undisclosed limitations on the agent's power.

(Citations omitted.) *Amtruck Factors v. International Forest Prods.*, 59 Wn. App. 8, 19, 795 P.2d 742 (1990), *review denied*, 116 Wn.2d 1003 (1991). While apparent authority can be inferred from the principal's actions, "there must be evidence the principal had knowledge of the act which was being committed by its agent." *Mauch v. Kissling*, 56 Wn. App. 312, 316, 783 P.2d 601 (1989).

Here, National acknowledges that Cascade was its agent "to execute, seal and deliver for and on its behalf . . . a bail bond only". According to National's statements during the exoneration hearing, it was Cascade who stamped its own name and address on the bond and directed all court notices to be sent to it. National allegedly did not know of that practice. However, when Cascade received notice of Parada's failure to appear and all subsequent court notices, it promptly forwarded those notices to National. Cascade never refused to accept the notices from the State. National has never denied that it received those timely notices from Cascade. Thus, the inference can readily be drawn that National knew Cascade was accepting notice on its behalf. *See Mauch*, 56 Wn. App. at 316.

However, until it moved to exonerate the bond, National never notified the State that it had not authorized Cascade to receive notice on its behalf. When a principal's conduct would lead a reasonable person to believe an agent had authority to perform certain acts, the agent acquires apparent authority to perform such acts. *Amtruck*, 59 Wn.

App. at 19. National failed to preclude Cascade from accepting notice for it and failed to reveal any limitation on Cascade's authority to do so. Consequently, National created an apparent authority in Cascade to accept notice on its behalf. *See Amtruck*, 59 Wn. App. at 19. The State justifiably relied on Cascade's apparent authority and therefore is not bound by any undisclosed limitations on that authority. *See Walker v. Pacific Mobile Homes, Inc.*, 68 Wn.2d 347, 351, 413 P.2d 3 (1966); *Amtruck*, 59 Wn. App. at 19.

Relying on *State v. Wallace*, 97 Wn.2d 846, 651 P.2d 201 (1982), National argues that the limited terms of the power of attorney served as notice to the State that Cascade had no authority to receive notice for National. *Wallace* reiterated the general rule that "a limited power of attorney conveys only the authority expressed therein." 97 Wn.2d at 851.

■ However, the power of attorney in this case is silent about whether Cascade had authority to receive notice on National's behalf. Given the sort of authority the power of attorney does expressly convey, it is not unreasonable to assume that receiving notice for National on matters involving Parada's bond was part of Cascade's function in carrying out its obligations under the power of attorney. *See Walker*, 68 Wn.2d at 351 (an agent's authority "to perform particular services for a principal carries with it the implied authority to perform the usual and necessary acts essential to carry out the authorized services"). Moreover, as previously discussed, National's own conduct created Cascade's apparent authority to receive notice for National.

"Expansion" of Power of Attorney. National next asserts that the State sought to expand the scope of Cascade's authority by adding to the express terms of the power of attorney the authority to receive notice for National. Citing *Spokane Union Stockyards Co. v. Maryland Cas. Co.*, 105 Wash. 306, 308, 178 P. 3 (1919), National concludes that such an attempt effectively discharged it from any obligation under the bond. According to *Spokane Union*, any material alteration in the obligations of a surety will discharge that surety from liability. 105 Wash. at 308.

Here, however, the State did not expand or alter Cascade's authority or obligations. National's own conduct — that is, its failure to preclude Cascade from accepting notice and its failure to reveal any limitations on Cascade's authority — created Cascade's apparent authority to accept notice on its behalf for matters involving the Parada bond. Thus, National remains bound to its obligations under the surety agreement.

Estoppel. National also argues the State was estopped from claiming it had properly notified National by giving notice to Cascade. The elements of equitable estoppel are

(1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in reliance upon that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission.

*Board of Regents v. Seattle*, 108 Wn.2d 545, 551, 741 P.2d 11 (1987). According to National, the State was estopped from asserting that it had properly notified National because (1) the State claimed it notified National when it had only notified Cascade; (2) in reliance on the fact that the State did not directly notify National, National took no action when Cascade received and forwarded notices to it; and (3) National was injured by the forfeiture of the bond.

In light of Cascade's apparent authority, National's estoppel argument must fail. The State justifiably relied on Cascade's acts of accepting the State's notices and forwarding them to National (*see Amtruck*, 59 Wn. App. at 19) and properly assumed that such notice substantially satisfied the statutory requirement. Thus, the State was not estopped from arguing that National had been properly notified.[2]

## II

National next contends that the trial court's conclusions of law are not supported by the findings of fact. National spe-

---

[2]Indeed, given the elements of equitable estoppel, the State could have successfully argued that National was estopped from asserting that Cascade lacked authority to receive notice on its behalf. *See Board of Regents*, 108 Wn.2d at 551.

cifically assigns error to conclusions of law 2 and 3, which read:

> 2. National American Insurance Company was not notified *directly* by the State of Washington of the non-appearance of Jesus L. Parada within thirty days of said non-appearance, although the State did notify the Bailor *who forwarded notice* within the thirty days following the non-appearance of Jesus L. Parada *to the surety.*
>
> 3. Due to the non-appearance of Jesus L. Parada and the notification of Bailor by the State, *who forwarded notice to the surety,* the $25,000.00 Bail Bond posted by NAIC, under the individually numbered Power of Attorney NA25-106652 is hereby forfeited.

(Italics ours (to show the trial court's insertions into National's proposed conclusions).)

The court's findings relevant to this issue are findings of fact 1 and 6. Finding of fact 1 states in part that the "individually numbered Power of Attorney NA25-106652 does not grant bailor the authority to receive notice for [National]." Finding of fact 6 states in part that none of the documents involved in the bond forfeiture hearing were "sent by the State *directly* to the Surety, National." (Italics ours (to show the trial court's insertion into National's proposed finding).)

██ While the trial court's findings do not directly state that Cascade received the State's notices and forwarded them to National, it is clear from the court's interlineation and the discussion during the exoneration hearing that that was its intent.[3] *See In re Marriage of Yates*, 17 Wn. App. 772, 773, 565 P.2d 825 (1977) (when a trial court's oral opinion is consistent with the formal findings of fact, an appellate court may review the oral opinion to clarify the findings). Similarly, while the court did not expressly conclude that Cascade had apparent authority to receive notice for National in this matter, it is clear from the court's interlineations that it believed notice to the bailor, Cascade, was tantamount to notice to the surety, National. That conclusion is not undermined by finding of fact 1 because even

---

[3]The trial court's letter accompanying the Order Forfeiting Bail indicated the court based its decision on the reasons it gave during the exoneration hearing.

though the power of attorney does not expressly authorize Cascade to receive notice for National, National's own conduct, as discussed above, created Cascade's apparent authority to do so. Thus, when the trial court's interlineations and its oral opinion are considered in conjunction with the written findings of fact and conclusions of law, the court's findings support its conclusions.

## III

National also asserts that the trial court's denial of its March 26, 1993, motion for reconsideration was "a reversible abuse of discretion" because the trial court did not respond to the parties' briefing on the matter and, thus, effectively denied the motion without giving any reasons for doing so. Br. of Appellant, at 30. On November 15, 1993, however, after National filed its appellate brief, the trial court entered an order denying the motion on the grounds that National "had notice of forfeiture" and there was "no basis presented under CR 59 for reconsideration".[4] Thus, the trial court specified its reasons for denying the motion and there was no abuse of discretion.

## IV

Finally, we must decide whether National's appeal is frivolous. The State contends that the appeal is frivolous because the only basis for it is National's argument that direct notice to the surety was mandatory. National does not specifically respond to this contention.

An appeal is only frivolous "if no debatable issues are presented upon which reasonable minds might differ, and it is so devoid of merit that no reasonable possibility of reversal exists." *Chapman v. Perera*, 41 Wn. App. 444, 455-56,

---

[4]CR 59 authorizes a trial court to grant a new trial or a motion for reconsideration on nine grounds: (1) irregularity in the proceedings; (2) misconduct of the prevailing party or jury; (3) accident or surprise; (4) newly discovered evidence; (5) inadequate or excessive damages; (6) error in the assessment of the amount of recovery; (7) the evidence or reasonable inferences from the evidence do not justify the verdict or decision, or the decision is contrary to law; (8) error in law to which proper objection was made; and (9) substantial justice has not been done.

704 P.2d 1224, *review denied*, 104 Wn.2d 1020 (1985). Because reasonable minds could potentially differ about whether the Legislature intended RCW 10.19.090 to unconditionally require the court to give notice directly to the surety, National's appeal is not "frivolous" as defined by law. Hence, the State's request for attorney fees is denied.

WEBSTER, C.J., and AGID, J., concur.