FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 OCT -7 AM 8: 57



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re the Estate of | ) | No. 68928-2-I |
|  | ) |  |
| LYDE L. HERRLE, | ) | DIVISION ONE |
|  | ) |  |
| Deceased. | ) |  |
|  | ) |  |
| CONNIE MARICH and THOMAS MARICH, and the marital community composed thereof, | ) | UNPUBLISHED |
|  | ) |  |
|  | ) | FILED: October 7, 2013 |
|  | ) |  |
| Appellants, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| JOHN LEE, Personal Representative to the Estate and Trustee of the Lyde L. Herrle Trust, | ) |  |
|  | ) |  |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |

Cox, J. — At issue is whether the trial court properly granted summary judgment in favor of Lyde Herrle's estate (the "Estate"), quieting title to certain property in favor of the Estate, and denying the Marichs' motion for summary judgment. Because there are genuine issues of material fact regarding both motions, we affirm in part, reverse in part, and remand for further proceedings.

Connie and Thomas Marich (collectively the "Marichs") are husband and wife. Connie Marich is the niece of Lyde Herrle.

In 2008, the Marichs moved onto Herrle's farm property. According to Connie Marich's sworn testimony, she and her husband did so to "tak[e] care of [Herrle] and the farm."[1]

Marich further testified that, sometime in 2008, her uncle showed her and her husband the Complete Amendment to the Lyde L. Herrle Trust. According to this document, the 26 acre farm on which they then lived was to be left to the Marichs, provided they paid "$100,000 for that farm, improvements and farm equipment."[2] That same year, she and her husband gave Herrle a check for "$10,000, which [they] . . . understood was a down payment on the farm."[3]

In January 2010, Marich and her husband became aware of a second amendment to the trust. They understood this document showed that Herrle intended to sell the farm to someone else, not to them. She believed that Herrle was not mentally competent to modify any will or trust.

Marich contacted Marie Kunferman, her aunt and Herrle's sister, to discuss concerns about this amendment. Kunferman, who later became the personal representative of the Estate, told Marich to talk to Kunferman's attorney, Rosemary Kamb. Marich testified that she and her husband met with Kamb "at least three times" between January and April 2010.[4]

---

[1] Clerk's Papers at 542.

[2] Id. at 542, 561.

[3] Id. at 542-43.

[4] Id. at 543.

Herrle passed away on February 23, 2010. Earlier that month, Herrle amended his trust in his will for a third time. In the third amendment, he allocated a detailed bequest to Connie Marich. The bequest called for a $150,000 distribution to be made to Marich for the purpose of purchasing a house. This was contingent on her fulfilling certain conditions. The trust instrument also provided that the trust would maintain an interest in any property purchased with these funds.

In April 2010, the Skagit County Superior Court admitted Herrle's will to probate and appointed Kunferman to be the personal representative of the Estate. Later that month, the Estate issued three checks to Connie Marich totaling $150,000. Marich signed a "Full and Final Distribution and Receipt of Heir."

The purpose of these payments is at issue in this appeal, as it was before the trial court.

The Marichs assert that the payments were part of a settlement agreement. During their meetings with Kamb, the Marichs assert that Kamb allegedly offered to settle any of the Marichs' claims. Specifically, Connie Marich claimed that she and her husband were entitled to the farm and that its value was $342,000. According to Marich, she understood Kamb to be acting on behalf of the Estate, as the attorney for Kunferman. Marich claims she and her husband agreed to settle all claims in return for a payment of $150,000.

In June 2010, the Marichs purchased a house for $351,100 in Skagit County. In so doing, they did not create any title interest in favor of the trust. We assume they took title in themselves alone.

Almost a year after their purchase, the Estate requested that the Marichs execute a quitclaim deed to transfer a 42.7 percent interest in their Skagit County property to the trust. This percentage was determined based on the terms of the trust. The trust instrument stated "that portion of the house purchased by the proceeds of this trust shall be used to determine a percentage of ownership in the house purchased by Connie Marich."[5] The Marichs refused to grant the Estate's request.

A new personal representative for the Estate, John Lee, commenced this TEDRA proceeding by a petition to quiet title. The trial court joined the quiet title action with the probate matter and set a hearing for the parties' cross-motions for summary judgment.

The Estate moved for summary judgment, contending that the $150,000 distribution to the Marichs was done according to the express terms of Herrle's trust. Those terms included conditions that the Skagit County purchase allegedly violated.

The Marichs also moved for summary judgment, arguing that the $150,000 payment was made pursuant to a settlement agreement of any claims against the Estate. Specifically, they took the position that they had a claim to

---

[5] Id. at 67.

the farm, which they claimed was worth over $340,000. They denied the funds were subject to the terms of Herrle's trust.

The trial court granted the Estate's motion for summary judgment. It also denied the Marichs' motion.

The Marichs appeal.

## GRANT OF SUMMARY JUDGMENT TO THE ESTATE

The Marichs first argue that the trial court erred when it granted summary judgment in favor of the Estate. Because there are genuine issues of material fact for trial, we agree.

This court reviews a grant of summary judgment de novo, undertaking the same inquiry as the trial court.[6] Summary judgment is proper if, viewing the facts and reasonable inferences most favorably to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.[7] Summary judgment is proper "only if, from all the evidence, reasonable persons could reach but one conclusion."[8]

The moving party has the initial burden to show that there is no genuine issue as to any material fact.[9] If the moving party satisfies its burden, the burden shifts to the nonmoving party to present evidence that material facts are in

---

[6] Lam v. Global Med. Sys., Inc., 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005).

[7] CR 56(c); Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319-20, 111 P.3d 866 (2005).

[8] Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[9] Hiatt v. Walker Chevrolet Co., 120 Wn.2d 57, 66, 837 P.2d 618 (1992).

dispute.[10] "If the nonmoving party fails to do so, then summary judgment is proper."[11]

This court reviews de novo the interpretation of a will or trust instrument.[12] When construing a testamentary instrument, this court's paramount duty is to give effect to the maker's intent.[13] "Where the meaning of an instrument evidencing a trust is unambiguous, the instrument is not one requiring judicial construction or interpretation . . . ."[14]

Here, Herrle's third amendment to the trust was unambiguous. Under the heading "Special Bequests," it stated:

> One Hundred Fifty Thousand Dollars ($150,000.00) shall be made available to purchase a house for the benefit of Connie Marich. The house shall be one that is located in Skagit County and is within an hour's drive of my sister, Marie A. Kunferman. Connie may choose any house she wishes, however, it is not my intent to buy a house outright for Connie. It is my intent to see that she is provided for, for her lifetime, therefore if this bequest is used to purchase a house for Connie then the title of this house shall maintain a legal life estate for Connie. This bequest is contingent upon Connie Marich living in the house and being available to help my sister, Marie A. Kunferman, for as long as Marie is alive.
>
> . . .
>
> The above provision to provide funds for a house for Connie Marich for her life replaces any previously mentioned special

---

[10] Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

[11] Id.

[12] In re Estate of Curry, 98 Wn. App. 107, 112-13, 988 P.2d 505 (1999).

[13] In re Estate of Riemcke, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972).

[14] Templeton v. Peoples Nat'l Bank of Wash., 106 Wn.2d 304, 309, 722 P.2d 63 (1986).

bequest of twenty five thousand dollars ($25,000.00) going outright, or as soon as is practicable to Connie Marich.

Further, as to any of the proceeds of my trust going to the purchase of a house for Connie Marich, that portion of the house purchased by the proceeds of this trust shall be used to determine a percentage of ownership in the house purchased by Connie Marich. The percentage of the house purchased by Connie Marich shall remain the percentage owned by the trust throughout the time that Connie lives on the property. In the event that Connie chooses to sell the property or to move off of the property, the same percentage of the property as determined by the amount from the trust used in the original purchase shall be [the] amount that goes to Immaculate Conception School Foundation upon the sale of the property or the death of Connie Marich. That is, if the house purchased is purchased for $200,00.00 [sic] and $150,000.00 comes from the trust, then ¾ of the house is what the trust owns and ¼ of the house is what Connie Marich owns. Therefore, if the house increases in value to $400,000.00 and Connie sells the house, then Connie shall receive $100,000.00 of the sale proceeds and Immaculate Conception Regional School Endowment shall receive the remaining ¾ of the sale proceeds. This is my intent.[15]

According to this amendment, Herrle clearly intended a distribution of $150,000 to be made to Connie Marich, subject to certain conditions on the use of the proceeds. Likewise, it is clear that a total of $150,000 was disbursed to her. The question is why.

The Estate met its initial burden to show the absence of any genuine issue of material fact by its reliance on the trust documents. The burden then shifted to the Marichs to show the existence of a genuine issue of material fact for trial. On this record, we conclude they did so.

At issue is whether Kamb had the authority to enter into a settlement agreement on behalf of the Estate with the Marichs.

---

[15] Clerk's Papers at 66-67.

"An agent's apparent authority to bind a principal depends upon the objective manifestations of the principal to a third person."[16] "Apparent authority cannot be inferred from the acts of the agent."[17] Further, apparent authority can be inferred from the principal's actions, but the principal must have "'knowledge of the act which was being committed by its agent.'"[18]

As noted above, the Marichs testified that they believed that Herrle was not competent when he amended his trust. They testified that Kunferman, who was the personal representative of Herrle's estate, told them to talk to her attorney, Kamb, about any concerns and potential claims. When the Marichs met with Kamb, they believed that Kamb was acting on behalf of the Estate and that she had the authority to negotiate a settlement with them. Thus, they contend that the $150,000 distribution was for the purpose of settlement.

In contrast, Kunferman testified, "I did not, at any time, authorize Rosemary Kamb to enter into any agreement with Thomas and Connie Marich with regard to any transaction on behalf of the Estate."[19] This record contains no testimony from Kamb.

Given this conflicting testimony and the absence of testimony from Kamb, there are genuine issues of material fact regarding Kamb's authority to enter into a settlement agreement with the Marichs.

---

[16] State v. French, 88 Wn. App. 586, 595, 945 P.2d 752 (1997).

[17] Id.

[18] Id. (internal quotation marks omitted) (quoting State v. Parada, 75 Wn. App. 224, 231, 877 P.2d 231 (1994)).

[19] Clerk's Papers at 667.

8

The Estate argues that the checks issued to the Marichs totaling $150,000 and the Full and Final Distribution and Receipt of Heir prove that the distribution was in accordance with the trust terms and was not a settlement. The checks do not provide any explanation for the $150,000 distribution. But the Receipt of Heir states that Connie Marich received $150,000 as her "full and complete share of the above mentioned Trust and/or Estate as provided to [her] under the Testamentary document and/or the laws of the State of Washington."[20] Further, it appears to contain Marich's handwriting, which states that the $150,000 was the "full amount stated in the will."[21]

The lack of settlement language in the checks and Receipt of Heir cut against the Marichs' assertion that the $150,000 was a payment pursuant to a settlement agreement. But the Marichs' sworn testimony, as discussed above, is sufficient to raise a genuine issue of material fact as to the purpose of the $150,000 distribution. At the summary judgment stage, it is improper to weigh the written documentation against the Marichs' sworn testimony. Consequently, this evidence highlights the existence of a genuine issue of material fact in this case.

In sum, we cannot say, from all the evidence that was before the trial court, that reasonable persons could reach but one conclusion regarding the purpose of the $150,000 payment. Thus, the trial court improperly granted summary judgment in favor of the Estate.

---

[20] Clerk's Papers at 572.

[21] Id.

The Estate argues that the Marichs' alleged option to purchase Herrle's farm property is unenforceable under the statute of frauds. "Under the statute of frauds, contracts for the sale or conveyance of real property must include a legal description of the property."[22] While the trust documents did not include a legal description of the farm property, the Marichs are not arguing that this option be enforced. Rather, they argue that the $150,000 they received was pursuant to a settlement agreement for any of their potential claims. Thus, this argument is not analytically relevant.

Finally, the Estate argues that portions of the Marichs' declarations were barred by the statute of frauds, the dead man's statute, and other evidentiary rules. Before the trial court, the Estate objected to portions of the Marichs' declarations as violating these rules. It requested that the trial court disregard any inadmissible statements. But it appears that this request was implicitly denied. The order granting the Estate's motion for summary judgment states that the various declarations of the Marichs were considered. That means that the trial court appears to have implicitly denied the request to disregard this evidence. Moreover, the Estate did not cross-appeal the implicit denial of their motion to strike. Thus, the Marichs' declarations are part of the record on review.

---

[22] Pardee v. Jolly, 163 Wn.2d 558, 566-67, 182 P.3d 967 (2008).

## DENIAL OF SUMMARY JUDGMENT TO THE MARICHS

The Marichs next argue that the trial court erred when it denied their motion for summary judgment in favor of them. They argue that it is undisputed that the $150,000 distribution was for the settlement of all the Marichs' claims against the Estate. As discussed above, there are genuine issues of material fact regarding the purpose of the $150,000 distribution. Thus, summary judgment in favor of the Marichs is also inappropriate. The trial court properly denied the Marichs' motion.

Because we conclude that summary judgment was inappropriate, we need not address the Marichs' promissory estoppel arguments.

## ABANDONED DISMISSAL MOTION

The Estate moved to dismiss this appeal and remand to vacate the order below. But during oral argument, the Estate abandoned this motion. Consequently, we do not consider it further.

## CR 11

Finally, in the Marichs' response to the Estate's motion to dismiss, the Marichs assert that one of the Estate's attorneys violated CR 11. They contend that the Estate could have discovered that the $150,000 distribution was not used to purchase the Skagit County property if it reviewed the original Deed and Deed of Trust at the Skagit County Auditor's office. Thus, the Marichs argue that the Estate's attorney made arguments that were not grounded in fact.

Because there is no motion for CR 11 sanctions before us, we do not address this assertion further.

We affirm the denial of summary judgment to the Marichs, reverse the grant of summary judgment to the Estate, and remand for such further proceedings as are appropriate.

_____
Cox, J.

WE CONCUR:

_____          _____
Becker, J.